IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BARBARA DENNIS, on behalf of the ESTATE OF JAMES CARTER, | | |
| Plaintiff, | | |
| v. | | Civil Action No. 3:16-CV-3148-G-BN |
| UNITED STATES OF AMERICA, | | |
| Defendant. | | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO QUASH OR ALTERNATIVELY, FOR PROTECTIVE ORDER AND THEREOF**

Respectfully Submitted,

JOHN R. PARKER
UNITED STATES ATTORNEY

_s/ Mary M. (Marti) Cherry_
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas State Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, TX  75242
Telephone:  214-659-7600
Facsimile:  214-659-8807
E-mail:  mary.cherry@usdoj.gov

_Attorneys for Defendants_

# TABLE OF CONTENTS

I.   BACKGROUND ........................................................................................ 2

   A.   The parties are engaged in active discovery. .......................................... 2

   B.   Defendant objects to Dennis's request to depose a corporate representative
        because the topics identified are unduly burdensome. ............................ 3

II.  ARGUMENT AND AUTHORITIES ........................................................ 7

   A.   Legal Standards ................................................................................. 7

      1.   Protective Orders ......................................................................... 7

      2.   Depositions of Corporate Representatives ....................................... 8

      3.   Contention Interrogatories ........................................................... 10

   B.   There is good cause to quash the deposition, or in the alternative, to issue a
        protective order limiting the deposition of a corporate representative. ............... 11

      1.   Dennis's request to depose a representative regarding Defendant's
           affirmative defenses and interrogatory responses is an improper
           contention deposition. ................................................................. 13

      2.   Dennis's request to depose a representative regarding specific
           medical conditions is unduly burdensome and not proportional
           to the needs of the case. .............................................................. 14

      3.   Dennis's request to depose a representative regarding the entire record is
           unduly burdensome and not proportional to the needs of the case. .................. 15

      4.   Dennis fails to establish that she cannot obtain the information
           she seeks through other less intrusive means. .................................. 17

      5.   Dennis cannot require Defendant to marshal its evidence and identify all
           documents supporting its defenses at a representative's deposition. .............. 19

# TABLE OF AUTHORITIES

## <u>CASES</u>

*BB&T v. United States*,
233 F.R.D. 447 (M.D.N.C. 2006) ........................................................................10-11, 18

*Bramlett v. Med. Protective Co.*,
No. 3:10-CV-2048-D, 2013 WL 121235151 (N.D. Tex. June 25, 2013) ........................ 16

*Brazos River Auth. v. GE Ionics, Inc.*,
469 F.3d 416 (2006) ...................................................................................................... 8

*Carter v. United States*,
164 F.R.D. 131 (D. Mass. 1995) ................................................................................... 20

*Fed. Trade Comm'n v. U.S. Grant Res., LLC*,
No. Civ. A. 04-596, 2004 WL 1444951 (E.D. La. June 25, 2004) .......... 7, 9, 10,11, 16, 20

*HSBC Bank USA, N.A., v. Green Valley Pecos Homeowners Ass'n, Inc.*,
Case No. 2:16-cv-00242-JCM-GWF, 2016 WL 6915301
(D. Nev. Nov. 21, 2011) ........................................................................................... 17, 18

*In re Indep. Servs. Org. Antitrust Litig.*,
168 F.R.D. 651 (D. Kan. 1996) ......................................................................9, 11, 13, 16

*JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*,
209 F.R.D. 361 (S.D.N.Y. 2002) ................................................................................ 8, 14

*Liveperson, Inc. v. 24/7 Customer, Inc.*,
No. 14 Civ. 1559 (RWS), 2015 WL 4597546 (S.D.N.Y. July 29, 2015) ............... 9, 14, 18

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
Civ. A. No. 10-cv-02139-MSK-NYW, 2015 WL 37635422
(D. Colo. June 11, 2015) ................................................................................................ 8

*Lockheed Martin Corp. v. United States*,
Civ. A. No. 08-1160(ESH/AK), 2013 WL 1968372
(D.D.C. May 13, 2013) ................................................................................................... 9

*Nguyen v. Excel Corp.*,
197 F.3d 200 (5th Cir. 1999) ..................................................................................... 7, 10

*SEC v. Ahmed*,
Civ. No. 3:15cv675 (JBA), 2017 WL 1347668 (D. Conn. 2017) ................................... 13

RULES

Federal Rule of Civil Procedure 26(c)............................................................................. 1, 6

Federal Rule of Civil Procedure 30(b)(6)....................................................................... 8, 18

Federal Rule of Civil Procedure 33(d) ............................................................................... 19

Federal Rule of Civil Procedure 34(b)(2)(E)(i)................................................................. 19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARBARA DENNIS, on behalf of the
ESTATE OF JAMES CARTER,

      Plaintiff,

v.                                 Civil Action No. 3:16-CV-3148-G-BN

UNITED STATES OF AMERICA,

      Defendant.

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO QUASH OR
ALTERNATIVELY, FOR PROTECTIVE ORDER AND THEREOF**

Defendant United States of America moves to quash or, alternatively, for

protective order from Plaintiff Barbara Dennis's Amended Second Notice of Deposition

of a Corporate Representative with subpoenas duces tecum, dated August 8, 2017

pursuant to Federal Rule of Civil Procedure 26(c).  Defendant opposes the deposition

because Dennis seeks a contention deposition, covering an entire year of medical care

provided to an 87 year old patient at the VA with a complex medical history involving

than 80 employees.  Plaintiff revised the topics set forth in the notice, seeking to depose a

representative regarding "facts."  However, Defendant contends that the request to

depose a *corporate representative* regarding (a) "facts" related to Defendant's legal

theories invades the work product privilege, and (b) "facts" related to the medical care

provided by a large number of medical professionals is unduly burdensome.  Thus,

Defendant moves to quash the deposition in its entirety.  In the alternative, if Defendant

is required to produce a corporate representative, Defendant moves for a protective order

limiting the scope of the deposition, and to stay the deposition until no earlier than 30 days after the Court rules on this motion.

## I.   BACKGROUND

Dennis filed suit against the United States under the Federal Tort Claims Act (FTCA) for alleged negligent medical treatment of James Carter and amended her complaint on March 15, 2017.  (Dkts. 1, 14).  Dennis asserts Defendant is directly and vicariously liable for alleged negligence related to the care and treatment of Mr. Carter, who was a patient at the Dallas VA Medical Center or the Community Living Center (CLC) for slightly more than a year before he died at the age of 87.  (Dkt. 14 at 5-7). Dennis does not allege any particular individual was negligent, but avers Defendant is responsible for the acts of the VA's team of "physicians, doctors, nurses, staff members, technicians, specialists, non-specialists, and/or other personnel" who provided care to Mr. Carter.  (Dkt. 14 at 4, 5, 7).  Dennis's second amended initial disclosures identify more than eighty (80) VA employees with alleged knowledge of relevant facts in this case. (App'x 45-53).

### A.  The parties are engaged in active discovery.

On March 16, 2017, Defendant produced 10,641 pages of medical records and an administrative file regarding care the VA provided to Mr. Carter for multiple health problems.[1]  (App'x 1-2).  The following month, Defendant responded to Dennis's fifty-

---

[1] In its initial disclosures, Defendant produced medical records (Dft. ID 1-10,601) and administrative documents, such as the death certificate and tort claim. (Bates 10,602-641).  (App'x 10-11).

nine (59) requests for production, and produced an additional 179 pages of documents. (App'x 3-4, 17-43).  Defendant has thus produced 10,826 pages of documents to Dennis.

Defendant also served interrogatory responses to Dennis, identifying facts supporting some of Defendant's affirmative defenses.  (App'x 5-16).  Defendant's defenses are based upon information contained in the 10,000+ pages of medical records. For example, in response to Dennis's allegations that Defendant caused Mr. Carter to suffer a leg wound, an injured toe, and multiple bedsores (Dkt. 14 at ¶ 8), Defendant proffered the following facts in its defense:

> (1) Mr. Carter refused to participate in physical therapy and occupational therapy sessions;
> (2) Mr. Carter hit his leg against his wheelchair;
> (3) Mr. Carter bumped his toe; and
> (4) Mr. Carter failed to cooperate with the turn schedule.

(App'x 12-13).

### B. Defendant objects to Dennis's request to depose a corporate representative because the topics identified are unduly burdensome.

On May 11, 2017, Dennis requested three depositions:  Dr. Hkun Tun, Mr. William Chinn and a corporate representative.  (App'x 53).  Dennis explained that she intended to depose a corporate representative to discuss Defendant's amended answer, including its denials and affirmative defenses, and Defendant's discovery responses, including its interrogatory responses.  (App'x 44).  Defendant objected to Dennis's request to depose a corporate representative for this purpose, explaining that agency attorney Jenny Mai prepared Defendant's answer and interrogatory responses. (App'x 54-55).  Defendant further explained that it would not be able to discuss its legal theories or

deliberative process, including why Defendant chose to assert various affirmative defenses in its answer. (*Id*.) Defendant advised that its defense to Dennis's claims are based on the medical records, which are equally available to both parties. (*Id*.).

Notwithstanding Defendant's objection, Dennis unilaterally noticed the deposition of a corporate representative on June 16, 2017, including a subpoena duces tecum with fifty-nine (59) requests for production of documents similar to Plaintiff's first request for production, but asking Defendant's corporate representative to "produce" documents related to Defendant's interrogatory responses and affirmative defenses.[2] (App'x 58-69). Defendant identified a corporate representative but objected to Dennis's request to depose a corporate representative for this purpose and advised Dennis that Defendant intended to file a motion to quash. (App'x 72-77). In response, Dennis agreed to "suspend" her request to depose a corporate representative. (*Id*. at 72).

On July 27, 2017, Dennis advised that she again seeks to depose a corporate representative. (App'x 78-79). Defendant agreed to the date and time proposed, but advised Dennis that Defendant may object to the deposition. (App'x 80-81).

On August 2, 2017, Dennis served a Second Notice of Deposition of a Corporate Representative with Subpoena Duces Tecum. (App'x 82). In addition to deposing the representative regarding Defendant's denials, affirmative defenses, and interrogatories Dennis requested that the representative address Mr. Carter's leg injury, including its

---

[2] At the time Dennis noticed the deposition of a corporate representative, Dennis also noticed the depositions of Dr. Hkun Tun and Mr. William Chinn, attaching subpoenas duces tecum with sixty-one (61) requests for production. When Defendant objected to re-producing documents already produced, Dennis confirmed that she was not asking Defendant to re-produce those documents at the deposition. (App'x 73). Dennis deposed Dr. Tun and Mr. Chinn on July 19, 2017.

cause and treatment, and "the malnutrition that was a factor in Mr. Carter's death." (App'x 83-84).  Dennis demanded that Defendant "bring … to the deposition" all documents identified in the subpoena duces tecum.  (App'x 84). The subpoena duces tecum asked for the same documents Defendant previously produced in discovery, including documents related to (1) Defendant's affirmative defenses in its answer (No. 16-17); (2) Defendant's interrogatory responses (No. 18-32); (3) various individuals identified in the medical records (No. 33-55); and (4) Defendant's defenses to Dennis's claims (No. 58-63).  (App'x 89-94).

The parties again conferred extensively regarding the propriety of the deposition. (App'x 95-98).  On August 3, 4, and 8, Defendant explained that it objects to the request to depose a representative regarding its affirmative defenses because Defendant's affirmative defenses and answers to interrogatories are based on facts contained in the medical records.  (App'x 96).  Defendant's answer and interrogatory responses were drafted by attorneys and deposing a representative regarding those responses invades Defendant's work produce privilege.  (App'x 96).

Defendant also objected to a representative testifying regarding the facts related to Mr. Carter's medical condition(s), arguing that Dennis should depose the relevant fact witnesses, specifically, the doctors, nurses, technicians, dieticians, etc., who cared for Mr. Carter.  (App'x 96).  It would be unduly burdensome, if not virtually impossible for a *representative* to testify regarding the thoughts, impressions, and ideas of a vast number of medical professionals.  There are facts that might not have made it into the medical records but may have governed the care provided by the medical staff.  Dennis had not

explained how a *representative* could testify as to the "facts" outside the medical record. Only the individuals who provided care to Mr. Carter would be able to competently testify to facts outside the medical records.

Moreover, the medical records identify a vast number of medical professionals who cared for Mr. Carter for more than a year, and Dennis identified more than 80 in her second amended disclosures. (App'x 45-51). It would be unduly burdensome, if not impossible, for the United States to prepare a corporate representative to testify on the facts contained in 10,000+ pages of medical records, and to testify regarding those facts without explaining Defendant's legal theories and positions. (App'x 97-98). For these reasons, Defendant advised Dennis that Defendant would move to quash the deposition. (App'x 98).

In response, on August 8, 2017, Dennis served an Amended Second Notice of Deposition of a representative, setting the deposition for September 8, 2017.[3] (App'x 99-112). Dennis amended the deposition topics by adding the word "facts" in front of the topics, such as "[t]he facts upon which" Defendant bases denials and affirmative defenses and "[t]he facts upon with [*sic*]" Defendant bases its discovery responses, including its interrogatory answers.

The following week, August 14-16, 2017, the parties discussed settlement. (App'x 113). Defendant clarified in writing that it would file a motion to quash and would not produce a representative on September 8, 2017. (App'x 113). In light of the

---

[3] Defendant disagreed with the request to depose a representative, not the date. Thus, the parties did not discuss or agree on a date to depose the representative.

settlement discussions, Defendant advised it would not file the motion to quash, which would incur time and expense for Dennis to respond to a motion that could be moot, and Dennis agreed.  (App'x 113).

On August 17, 2017, Defendant tendered a counter-offer.  (App'x 115).  Two and a half weeks later, on Tuesday, September 5, 2017, Dennis rejected Defendant counter-offer.  (App'x 116).  The following day, September 6, 2017 at 4:58 p.m., Dennis asked if Defendant would produce a corporate representative on September 8, 2017 as noticed. (App'x 118).

## II.    ARGUMENT AND AUTHORITIES

### A.  Legal Standards

#### 1.  *Protective Orders*

Rule 26(c) of the Rules of Civil Procedure empowers a district court to issue an order to protect a party or witness from whom discovery is sought.  *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999).  For good cause shown, a district court may order that discovery be had by a method other than that selected by the party seeking discovery.  *Id.* at 208-09.  A party seeking a Rule 26(c) protective order prohibiting deposition testimony or document production must establish good cause and a specific need for protection.  *See Fed. Trade Comm'n v. U.S. Grant Res., LLC*, No. Civ. A. 04-596, 2004 WL 1444951, at *7 (E.D. La. June 25, 2004).  Good cause exists when justice requires the protection of a party or a person from "annoyance, embarrassment, oppression, or undue burden or expense."  *See id.*

### 2. *Depositions of Corporate Representatives*

Defendant does not dispute that the federal rules permit parties to depose a corporate representative. *See* FED. R. CIV. P. 30(b)(6). A corporate representative must make a conscientious good-faith endeavor to designate persons with knowledge of the matters sought by the party noticing the deposition and prepare those persons so that they can answer the questions posed as to the relevant subject matters fully, completely, and unevasively. *Brazos River Auth. v. GE Ionics, Inc*., 469 F.3d 416, 433 (2006). The organization must prepare the designee to the extent matters are reasonably available, whether from documents, past employees or other sources. *Id*. The designee does not give personal opinions, but presents the organization's "position" on a topic." *Id*. The organization represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition, which extends not only to facts but also to subjective beliefs and opinions. *Id*. If the representative is deficient, the corporation is obligated to provide a substitute. *Id*.

Rule 30(b)(6) requires that a party seeking to depose an organization must "describe with particularity the matters for examination." FED. R. CIV. P. 30(b)(6). For a Rule 30(b)(6) deposition to function effectively, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., Civ. A. No. 10-CV-02139-MSK-NYW, 2015 WL 37635422, at *4 (D. Colo. June 11, 2015).

However, "depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002); *see also Lockheed Martin Corp. v. United States*, Civ. A. No. 08-1160 (ESH/AK), 2013 WL 1968372, at *3 (D.D.C. May 13, 2013) (same).  Courts have recognized that "[u]nder the guise of requesting 'facts' … plaintiff is really requesting defendants' mental impressions, conclusions, opinions, and legal theories.  Such classic work product is properly shielded from discovery." *JPMorgan Chase Bank*, 209 F.R.D. at 363.

Contention depositions are an inappropriate attempt to depose opposing counsel, or a witness prepared by the opposing attorney, and delve into the theories, opinions, and mental impression of the opposing party's attorneys.  *See Fed. Trade Comm'n*, 2004 WL 1444951, at *9.  The deposition of an attorney or the attorney's designee that is intended to ascertain how the opposing party intends to marshal its facts, documents, and other evidence and to discern the deliberations, mental impressions, and/or thought processes on which the action is predicated in an inappropriate attempt to depose opposing counsel. *See id.*; *see also Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14 Civ. 1559 (RWS), 2015 WL 4597546, at * 7 (S.D.N.Y. July 29, 2015) (contention depositions improperly require a party or its attorney to collect and synthesize all of the information in its possession, impart that body of knowledge to the deponent, and the deponent, in turn, feeds that knowledge back to the opposing party in response to deposition questions); *In re Indep. Servs. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (defendant not required

to have counsel marshal all of its factual proof and prepare a witness to be able to testify on any given defense or counterclaim).

Courts have consistently found that an opposing party is not entitled to discovery of an attorney *or a corporate representative* to ascertain how the opposing party intends to marshal its facts, documents and other evidence, and to discern the deliberations, mental impressions and/or thought processes upon which the action is predicated. *Fed. Trade Comm'n*, 2004 WL 1444951, at *9, 11 (opposing counsel may rarely, if ever, use discovery mechanisms to obtain attorney's research, analysis of legal theories, mental impressions, and notes) (emphasis added). The tactic of seeking discovery from opposing counsel is generally disfavored and should be permitted in only limited circumstances. *Nguyen*, 197 F.3d at 209 n.26.

The mere request to depose a party's attorney or a 30(b)(6) witness prepared by the attorney constitutes good cause for obtaining a protective order unless the party seeking the deposition can show both the propriety and the need for the deposition. *Fed. Trade Comm'n*, 2004 WL 1444951, at *10 (courts take a critical view of deposition notices that seek "either the deposition of opposing counsel or the practical equivalent thereof").

### 3. *Contention Interrogatories*

Contention interrogatories are favored over contention depositions because by their nature, contention depositions will usually require the assistance of a party's attorney. *BB&T v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006). Until a party has first shown that an interrogatory process cannot be used, it may not seek to use

depositions for contention discovery.  *Id.* at 449; *Fed. Trade Comm'n*, 2004 WL

1444951, at *11 ("[a]bsent a showing of compelling need and the inability to discovery

the substantial equivalent by other means, work product of an attorney is not

discoverable); *In re Indep. Servs. Org. Antitrust Litig.*, 168 F.R.D. at 654 (protecting

party from deposition of corporate representative, especially "where information appears

to be discoverable by other means").  Moreover, when there is an expert report that will

touch on the very contentions at issue, a court should normally delay contention

discovery until after the expert reports have been served, which may render moot any

further contention discovery.  *BB&T*, 233 F.R.D. at 450.

### B. There is good cause to quash the deposition, or in the alternative, to issue a protective order limiting the deposition of a corporate representative.

Defendant objected to Dennis's original notice to depose a corporate

representative on the grounds that Dennis was seeking an improper contention deposition

concerning Defendant's denials and affirmative defenses and interrogatories.  (App'x 54-

55, 58-69).  In response, Dennis served a second notice of deposition, adding two topics

related to Mr. Carter's medical condition, his leg injury and malnutrition.  (App'x 83-84).

When Defendant continued to object, Dennis served an amended second notice, seeking

"fact upon which" Defendant bases its affirmative defenses and interrogatories, and the

"facts related to" Mr. Carter's leg injury and malnutrition.[4]  (App'x 101-02).

---

[4] The Amended Second Notice of Deposition states that Dennis intends to depose a corporate representative on five topics:

(1) The facts upon which Defendant bases denials and affirmative defenses in its amended answer;

(2) The facts upon which Defendant bases its discovery responses, including its interrogatory answers and document production;

Although Dennis has now limited the topics she identifies to the "facts" related to Defendant's denials, affirmative defenses, and interrogatory responses, Defendant contends deposing a representative regarding the "facts" is still an improper contention deposition. In addition, Dennis's request to depose a representative regarding "facts" related to Mr. Carter's medical care, including any specific injury or medical condition during that year, is unduly burdensome. That is because the representative would have to prepare to testify regarding the medical care provided to a frail, 87 year old patient with a complex medical history who was treated by a large team of specialists and other medical professionals, more than 80 of whom Dennis identified in her second amended initial disclosures, for multiple chronic comorbidities. (App'x 45-51).

Defendant does not object, in theory, to the request to depose a corporate representative to the extent Dennis seeks to identify facts that are outside the knowledge of the individuals who treated Mr. Carter. However, Defendant objects to Dennis's request to depose a corporate representative regarding (1) Defendant's legal theories and contentions and (2) facts contained in the entire 10,826 pages of documents produced in this case, including the medical records, administrative documents, and witnesses identified in those documents; (3) facts not included in the medical records regarding the decisions and judgment of the medical professionals identified in the medical records; and (4) facts related to the care provided by multiple medical professionals for Mr.

---

(3) The facts related to the leg injury suffered by Mr. Carter, including its cause and treatment;

(4) The facts related to the malnutrition that was a factor in Mr. Carter's death, including its cause and treatment; and

(5) The records and documents requested in the attached subpoena duces tecum. (App'x 101-02).

Carter's leg injury and malnutrition. Defendant contends Dennis should discover these facts directly from relevant medical providers who provided care to Mr. Carter, not a representative. For the reasons stated below, Defendant moves to quash the deposition in its entirety. Alternatively, if Defendant is required to produce a corporate representative, Defendant seeks a protective order limiting the deposition of a *corporate representative* to *facts contained in the medical records* related solely to Mr. Carter's leg injury and malnutrition.

### 1. Dennis's request to depose a representative regarding Defendant's affirmative defenses and interrogatory responses is an improper contention deposition.

Dennis seeks to depose a corporate representative regarding "facts" related to Defendant's answer, affirmative defenses and interrogatory responses. (App'x 101). Defendant's legal theories are based on the facts contained in the medical records. Those medical records are equally available to Dennis. Although Dennis now adds the word "facts" before each deposition topic, the word "fact" is not a panacea for an improper deposition regarding Defendant's legal theories and contentions. Dennis's request to depose a representative regarding Defendant's affirmative defenses and interrogatory responses, regardless whether she seeks to depose the representative regarding "facts" related to those issues, is an improper contention deposition and should be quashed. *See In re Indep. Servs. Org. Antitrust Litig.*, 168 F.R.D. at 654 (attempt to discover facts on which defendant relies for its defense and counterclaims was overbroad, inefficient, and unreasonable and implicated serious privilege concerns); *accord SEC v. Ahmed*, Civ. No. 3:15cv675 (JBA), 2017 WL 1347668, at * 2 (D. Conn. 2017) (quashing deposition of

corporate representative where opposing party did not seek facts, but information

protected by work product doctrine); *Liveperson, Inc.*, 2015 WL 4597546, at *7

(quashing deposition of corporate representative because opposing party sought

contention discovery, not facts); *JPMorgan Chase Bank*, 209 F.R.D. at 363 (denying

motion to compel deposition of corporate representative regarding "facts" where plaintiff,

in reality, was requesting mental impressions, conclusions, opinions and legal theory).

Dennis's request to depose a representative regarding Defendant's denials and affirmative

defenses in its amended answer and its discovery responses, including interrogatory

answers and document production, should be quashed.

> 2. ***Dennis's request to depose a representative regarding specific medical conditions is unduly burdensome and not proportional to the needs of the case.***

Dennis seeks to depose a representative regarding "facts related to" a leg injury

and "malnutrition that was a factor in Mr. Carter's death."  (App'x 101).  Asking a

representative to testify regarding two specific medical conditions is unduly burdensome

for several reasons.  A representative cannot completely and fully testify regarding facts

related to a specific health problem, such as the leg wound or alleged malnutrition.  That

is because medical staff made decisions regarding specific injuries and/or medical

conditions based upon Mr. Carter's unique and complex medical history – where a

decision regarding care for one medical issue could create more significant problems

because of another medical condition.  For example, any decision regarding how to treat

Mr. Carter's leg injury had to take into account his hypertension, coronary artery disease,

Stage IV kidney disease, later-developed esophageal ulcers, and multiple other issues.

Thus, the medical staff who made decisions regarding Mr. Carter's leg injury and/or malnutrition are in the best position to explain what decision was made based on his current condition and why.  It is impossible for a single representative (or multiple representatives) to explain why a team of internists, medical specialists, nurses, dieticians, and other medical professionals made daily, on-going decisions for an entire year regarding care they provided to a frail 87-year old patient with a complex medical history and multiple comorbidities.

If Dennis seeks to discover facts related to Mr. Carter's medical care to determine whether the VA was negligent in caring for specific injuries or medical conditions, Dennis should identify, from the medical records, the individuals who Dennis believes were negligent and depose those individuals regarding their alleged acts and omissions in caring for Mr. Carter.  While it may be appropriate to depose a representative regarding topics *other than* how and why certain medical staff provided care to Mr. Carter, that is not the purpose Dennis has identified for this deposition.  Dennis's request to depose a representative regarding Mr. Carter's medical condition, including his leg injury, malnutrition, or other medical condition, is unduly burdensome.  Topics related to Mr. Carter's specific medical conditions that are directed to a corporate representative should be quashed.

### 3.   *Dennis's request to depose a representative regarding the entire record is unduly burdensome and not proportional to the needs of the case.*

Dennis also seeks to depose a representative regarding the entire record of this case, which Defendant is required to bring to the deposition if not already produced.

**Brief in Support of Defendant's Motion to Quash or Alternatively, for Protective Order – Page 15**

(App'x 102).  This topic is unduly burdensome on its face.  Courts have made clear that a plaintiff cannot use a corporate deposition as a means to require a defendant to marshal all of its factual proof.  *See In re Indep. Servs. Org. Antitrust Litig.*, 168 F.R.D. at 654 (even under liberal discovery rules, defendant was "not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim."); *see also Fed. Trade Comm'n*, 2004 WL 1444951, at *10 (same).  Asking a corporate representative to testify regarding all of the care provided to Mr. Carter is an improper request for Defendant to marshal all of its factual proof and prepare the representative for the deposition.

The record includes more than 10,000 pages of medical records, administrative documents, and other information.[5]  (App'x 1, 21-24).  Plaintiff has identified more than 80 employees with knowledge of relevant facts.  Mr. Carter had a complex medical history with multiple medical conditions, including congestive heart failure, coronary artery disease, stage IV kidney disease, esophageal ulcers, and a number of other medical conditions.  To require a corporate representative to learn Mr. Carter's entire medical history and speak with more than 80 medical specialists and staff who provided care to Mr. Carter during the last twelve months of his life, is patently unduly burdensome and not proportional to the needs of the case.  Dennis's request to depose a representative

---

[5] Contrary to her earlier deposition notices, Dennis's Amended Second Notice of Deposition asks the deponent to produce only those documents that have not already been produced.  (App'x 102).  A defendant is not required to produce the same documents more than once.  *See Bramlett v. Med. Protective Co.*, No. 3:10-CV-2048-D, 2013 WL 12123515, at *1 (N.D. Tex. June 25, 2013) (denying motion to compel defendant to produce documents at depositions where those documents had already been produced).  Thus, to the extent Dennis re-asserts that Defendant is required to re-produce documents already produced at a deposition, Defendant would object to such request.

regarding the entire record in this case is an improper attempt to require Defendant to marshal all of its evidence, and this topic should be quashed.

### 4.  Dennis fails to establish that she cannot obtain the information she seeks through other less intrusive means.

Dennis fails to show that she cannot obtain information regarding Defendant's contentions or the facts of this case through means less burdensome than deposing a corporate representative.  "Where responsive information can be provided *more accurately* and with less burden through one method of discovery, that method should be used.  Duplicative discovery methods should be avoided." *HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc.*, Case No. 2:16-CV-00242-JCM-GWF, 2016 WL 6915301, at *6 (D. Nev. Nov. 21, 2011).

The medical providers who cared for Mr. Carter are better able to provide accurate testimony regarding what care they provided to Mr. Carter and why they provide that care than a representative speaking on behalf of those caregivers.  The medical providers are better able to explain what facts they documented in the medical records regarding Mr. Carter's leg injury and/or malnutrition and why.  Deposing relevant fact witnesses with direct and personal knowledge of the care provided to Mr. Carter is less burdensome, more efficient, and would provide more accurate testimony than asking one representative to review the 10,000+ pages of medical records, interview a large number of employees, and then speak on behalf of other persons who provided care to Mr. Carter. To the extent that Dennis believes the medical records demonstrate that Dallas VA employees were directly or vicariously negligent or did not properly supervise its

employees, Dennis should depose those individuals because they have personal knowledge of the facts regarding the care they provided to Mr. Carter. *See Liveperson, Inc.*, 2015 WL 4597546, at * 7 (to the extent defendant was not seeking contention discovery, defendant was free to depose witnesses identified by plaintiff, which would be more practicable and less burdensome than requiring corporate representatives to synthesize and familiarize themselves with all facts and contentions).

Dennis's contention discovery, seeking facts related to Defendant's affirmative defenses and interrogatory responses from a representative, is also unduly burdensome because both parties' claims and defenses in this medical negligence case must be proved with expert testimony. The disclosure of experts by both parties may moot Dennis's need for any contention discovery at all. *See BB&T*, 233 F.R.D. at 450. The parties' claims and defenses regarding a frail, 87 year old patient with a complex medical history will be more readily discernable when the parties' respective experts produce their reports.

Dennis's request for a deposition regarding Defendant's contentions is also duplicative and unduly burdensome because she already served numerous contention interrogatories to which Defendant responded and identified facts supporting its contentions. (App'x 5-14). Dennis did not object that Defendant's answer was incomplete or insufficient. *See HSBC Bank USA, N.A.*, 2016 WL 6915301, at *6 (if answer to interrogatory was insufficient or required follow up, court may require responding party to provide testimony on that matter at a Rule 30(b)(6) deposition). Dennis's request for a contention deposition, in addition to Defendant's interrogatory responses, is unnecessary and duplicative.

Defendant may also supplement its interrogatory responses near the end of discovery, if necessary, in support of its affirmative defenses. At that time, both parties will have examined the facts gathered during the discovery process. *See id.* at * 7 (contention interrogatories near close of discovery more appropriate means of obtaining information than 30(b)(6) deposition); *see also* FED. R. CIV. P. 33(a)(2) (court may order that interrogatories need not be answered until designated discovery is complete). To the extent Dennis believes, near the end of discovery, that Defendant's interrogatory responses are as yet incomplete or inaccurate, Dennis is entitled to ask Defendant to supplement its interrogatory responses, or move to compel a supplemental answer.

### 5. *Dennis cannot require Defendant to marshal its evidence and identify all documents supporting its defenses at a representative's deposition.*

Defendant is not required to point out those medical records that support Defendant's legal theories at a deposition, just as Defendant is not required to identify specific medical records in response to an interrogatory. Defendant produced all of the medical records as they are kept in the normal course of business in response to the interrogatories as permitted by the Federal Rules of Civil Procedure. FED. R. CIV. P. 33(d) and 34(b)(2)(E)(i). In response to the interrogatories, Defendant directed Dennis to the 10,641 pages of medical records, where applicable, because the burden of ascertaining the information would be essentially the same for either party. *See* FED. R. CIV. P. 33(d). Dennis did not object to Defendant's properly-framed discovery responses.

Furthermore, Defendant is not required to marshal its evidence and identify relevant documents supporting its defenses at the deposition.  *See Fed. Trade Comm'n*, 2004 WL 1444951, at *9 (defendant "not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim."); *see also Carter v. United States*, 164 F.R.D. 131, 134 (D. Mass. 1995) (quashing subpoenas where plaintiff had possession of the documents and it was plaintiff who was required to "classify and address the import of the documents").  Defendant is not required to marshal its evidence or identify facts in the record that support its legal theories and contentions through or during the deposition of a corporate representative.

## CONCLUSION

Dennis improperly seeks to require Defendant to marshal all of its factual proof through the deposition of a corporate representative.  Not only does this request pose significant privilege concerns, it is unnecessary, unduly burdensome, and not proportional to the needs of the case.  Defendant should not be required to prepare a corporate representative to testify regarding medical care provided by a plethora of medical staff contained in more than 10,000 pages of medical records.  Dennis should first designate its expert, depose relevant fact witnesses, and then, to the extent necessary, serve additional interrogatories.  Dennis has not demonstrated that she cannot obtain information the information she seeks through the medical records, expert testimony, depositions of relevant fact witnesses, and/or contention interrogatories.  For these reasons, Defendant moves to quash the deposition of a corporate representative.

To the extent Defendant is required to produce a corporate representative,
Defendant moves, alternatively, for a protective order limiting the deposition to the facts
contained in the medical records regarding Mr. Carter's leg injury and malnutrition.  If
Defendant is required to produce a representative, Defendant moves to stay the
deposition until no earlier than 30 days after the Court rules on this motion.

Dated: September 7, 2017

Respectfully Submitted,

JOHN R. PARKER
UNITED STATES ATTORNEY

*s/ Mary M. (Marti) Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas State Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, TX  75242
Telephone:  214-659-7600
Facsimile:  214-659-8807
E-mail:  mary.cherry@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred multiple times with counsel for Plaintiff regarding
Defendant's objections to the deposition of a corporate representative and to re-producing
documents at the deposition.  (App'x 54-55, 70-77, 95-98).  Counsel for Plaintiff advised
that he is opposed to the motion.  (App'x 99, 113)

**Brief in Support of Defendant's Motion to Quash or Alternatively, for Protective Order – Page 21**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2017, a true copy of the foregoing was submitted via the electronic case filing system with the Clerk of the U.S. District Court, Northern District of Texas and served upon all opposing parties, or their attorneys of record, by electronic delivery on this date.

*s/ Mary M. (Marti) Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney