**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BARBARA DENNIS, on behalf of the Estate of JAMES CARTER** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **VS.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY**
**RESPONSES AND DEPOSITION OF CORPORATE REPRESENTATIVE**

Respectfully submitted,

*s/ D. Bradley Kizzia*
**D. BRADLEY KIZZIA**
**Lead Attorney**
State Bar No. 11547550
bkizzia@kjpllc.com
**NICHOLAS D. CUSTRED**
State Bar No. 24101664
ncustred@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 613-3330

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the 24th day of October, 2017 in accordance with the Federal Rules of Civil Procedure.

*/s/ D. Bradley Kizzia*
**D. BRADLEY KIZZIA**

## CONTENTS

**EXHIBIT**                                                                                    **PAGE**

A.      Defendant's Response and Objections to Plaintiff's First Set of Interrogatories ...........001

B.      Deposition of Hkun D. Tun, M.D., taken July 19, 2017 .................................................014

C.      Dallas VA Medical Records of James Carter (Dft ID 2930 and 6851) .........................030

D.      Photograph of James Carter's black eye ........................................................................033

E.      Photograph of James Carter's leg wound ......................................................................035

F.      Death Certificate of James Carter ..................................................................................037

G.      Plaintiff's First Requests for Production to Defendant United States of America ..........039

H.      Plaintiff's Notice of Deposition of Defendant Dallas VA Medical Center's Corporate Representative with Subpoena Duces Tecum; Plaintiff's Notice of Deposition of Hkun D. Run, M.D. with Subpoena Duces Tecum; and Plaintiff's Notice of Deposition of William Chinn with Subpoena Duces Tecum .....................................................................051

I.      June 21, 2017 email from Defendant's Counsel to Plaintiff's counsel ...........................088

J.      Plaintiff's Second Amended Notice of Deposition of Dallas VA Medical Center's Corporate Representative with Subpoena Duces Tecum and Plaintiff's Amended Second Notice of Deposition of Dallas VA Medical Center's Corporate Representative with Subpoena Duces Tecum .....................................................................................................091

K.      Plaintiff's First Set of Interrogatories to Defendant United States of America ..............116

L.      Defendant's Response and Objections to Plaintiff's First Requests for Production of Documents ......................................................................................................................123

M.      August 8, 2017 email from Plaintiff's counsel to Defendant's counsel .........................151

N.      August 2, 2017 through August 4, 2017 email exchange between Plaintiff and Defendant's counsel ..........................................................................................................154

O.      September 6, 2017 email from Plaintiff's counsel to Defendant's counsel....................159

P.      Photographs of James Carter's Bed Sores ....................................................................162

Q.      Defendant's Response and Objections to Plaintiff's Second Requests for Production of Documents ......................................................................................................................165

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARBARA DENNIS, on behalf of the
ESTATE OF JAMES CARTER,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 3:16-CV-3148-G-BN

## DEFENDANT'S RESPONSE AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant United States of America (Defendant) serves its First Responses and Objections to Plaintiff Barbara Dennis's First Request for Interrogatories. The following responses are based upon Defendant's interpretation of the requests propounded by Plaintiff and upon information and documents presently available to Defendant after conducting a reasonable investigation.

## INTERROGATORIES

### INTERROGATORY No. 1.

*Do you contend that any of the doctors, nurses, pathologists, x-ray techs, and/or all other medical personnel that treated or cared for James Carter at the Dallas VA were not employees or otherwise under the control of the United States, Department of Veteran Affairs, or some agency thereof? If so, please identify each individual that you contend was not an employee or otherwise under the control of the United States, Department of Veterans Affairs, or some agency thereof.*

*Response No. 1.*

Defendant objects to this interrogatory as not relevant or proportional to the needs of the case because it seeks information about the employment status of doctors, nurses,

pathologists, x-ray techs, and/or any other medical personnel who provided care to Mr. Carter, but the care they provided is not at issue in this case.

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant identified all individuals likely to have discoverable information in its Initial Disclosures. Each individual identified in Defendant's Initial Disclosures is a current or former employee, except Dr. Jaicus Solis. Dr. Solis, a former surgical resident, was under the direction and control of the Defendant at the time of the events at issue in this case. If Plaintiff identifies any additional person(s) not disclosed by either party, who Plaintiff contends is likely to have discoverable information with regard to her claims in this case, Defendant will determine whether such person is Defendant's employee.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which may contain the information requested and the burden of ascertaining the answer falls equally on the parties.

## INTERROGATORY No. 2.

*Do you contend that James Carter was properly given all necessary care and supervision by doctors, nurses, pathologists, x-ray techs, and/or all other medical personnel at the Dallas VA from the time of his admittance on November 11, 2014, until his death on November 25, 2015? If not, please explain.*

### Response No. 2.

Defendant contends that its employees provided health care to Mr. Carter that conformed to all aspects of the applicable standards of care, and that its employees properly supervised the care provided to Mr. Carter.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which may contain the information requested and the burden of ascertaining the answer falls equally on the parties.

## INTERROGATORY No. 3.

*What date was James Carter admitted and/or discharged from the VA Community Living Center as indicated in paragraph 8 of Defendant United States of America's Original Answer.*

### Response No. 3.

Defendant provided a copy of James Carter's medical records pursuant to its initial disclosures, which includes all progress notes containing the dates of admission and

discharge, Mr. Carter's condition upon admission and at discharge, and reasons for admission and discharge.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to Mr. Carter's medical records, which contain the information requested and the burden of ascertaining the answer falls equally on the parties.

## INTERROGATORY No. 4.

*Under what condition(s) and/or reason(s) was James Carter moved and/or discharged from the Dallas VA to the VA Community Living Center?*

*Response No. 4.*

Defendant provided a copy of Mr. Carter's medical records pursuant to its initial disclosures, which includes all progress notes containing the dates of admission and discharge, Mr. Carter's condition upon admission and at discharge, and reasons for admission and discharge.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to Mr. Carter's medical records, which contain the information requested and the burden of ascertaining the answer falls equally on the parties.

## INTERROGATORY No. 5.

*Under what condition(s) and/or reason(s) was James Carter moved and/or discharged from the VA Community Living Center to the Dallas VA?*

*Response No. 5.*

Defendant provided a copy of Mr. Carter's medical records pursuant to its initial disclosures, which includes all progress notes containing the dates of admission and discharge, Mr. Carter's condition upon admission and at discharge, and reasons for admission and discharge.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to Mr. Carter's medical records, which contain the information requested and the burden of ascertaining the answer falls equally on the parties.

**INTERROGATORY No. 6.**

*What policies, procedures, and or protocol are supposed to be followed by the Dallas VA when a patient is dropped and/or falls under its supervision and care?*

*Response No. 6.*

Defendant refers Plaintiff to the Veterans Health Administration-wide policies, procedures, requirements and other information of general applicability are available at http://www.va.gov/vhapublications/.

Defendant attaches a policy applicable to the Dallas VA Medical Center, **Dft Resp RFP 12-38:**

•        VANTHCS Memorandum No. 118A-12, Patient Fall Prevention Program

**INTERROGATORY No. 7.**

*What policies, procedures, and or protocol are supposed to be followed by the Dallas VA to ensure that its patients have the proper food and nutrition under its supervision and care?*

*Response No. 7.*

Defendant refers Plaintiff to the Veterans Health Administration-wide policies, procedures, requirements and other information of general applicability are available at http://www.va.gov/vhapublications/.

Defendant attaches a policy applicable to the Dallas VA Medical Center, **Dft Resp RFP 39-48**:

•        VANTHCS Memorandum No. 120-04, Policies and Procedures for Nutritional Care of Patients and Outpatient Nutritional Supplements

**INTERROGATORY No. 8.**

*What policies, procedures, and or protocol are supposed to be followed by the Dallas VA to ensure that its patients are receiving the proper prescribed medications and amounts for same for medical conditions and illnesses (blood pressure medication in James Carter's case) while under its care and supervision?*

*Response No. 8.*

Defendant refers Plaintiff to the Veterans Health Administration-wide policies, procedures, requirements and other information of general applicability are available at http://www.va.gov/vhapublications/.

In addition, Defendant attaches policies applicable to the Dallas VA Medical Center, **Dft Resp RFP 49-102**:

- VANTHCS Memorandum No. 11CHIO-01, Medication Reconciliation;

- VANTHCS Memorandum No. 118A-14, Bar Code Medication Administration (BCMA);

- VANTHCS Memorandum No. 119-01, Drug Policy and Procedures

- VA NTHCS Memorandum No. 119-07, High Risk, High Alert Medication Management;

- VA NTHCS Memorandum No. 119-13, Sound-Alike/Look-Alike Drugs (SALAD)

## INTERROGATORY No. 9.

*What is Defendant's explanation for the finding of malnutrition as a contributing factor to James Carter's death?*

### Response No. 9.

Defendant objects to and disputes Plaintiff's characterization of the evidence by stating that Defendant made a "finding of malnutrition as a contributing factor to James Carter's death." The death certificate lists one cause of death as Dysphagia/malnutrition but Defendant disputes that the death certificate, standing alone, is a "finding" of malnutrition or evidence that malnutrition was a contributing factor to James Carter's death.

Toward the end of Mr. Carter's life, at age 87, his medical condition continued to deteriorate. Defendant suggested a feeding tube and/or hospice after Defendant conducted medical tests that show Mr. Carter had, in addition to numerous other health issues, developed two esophageal ulcers. Furthermore, Mr. Carter complained that he disliked his medically-necessary diet, and he would no longer try to eat it.

## INTERROGATORY No. 10.

*Who was / were the dietician(s) involved with James Carter's care at the Dallas VA during the thirty (30) days that preceded his death?*

### Response No. 10.

During the last thirty (30) days that preceded Mr. Carter's death, Julie Black was his dietician at the CLC and Sharon Langlais was his dietician at the VA Medical Center.

**INTERROGATORY No. 11.**

**What is the Defendant's explanation for how and why James Carter was dropped while under Defendant's care on or about February 2, 2015?**

*Response No. 11.*

Defendant objects to and disputes Plaintiff's assertion that Defendant dropped Mr. Carter.  Defendant contends that its employees did not drop Mr. Carter while he was under Defendant's care, including on or about February 2, 2015.

**INTERROGATORY No. 12.**

**What is the Defendant's explanation for how and why an "abrasion" due to "mild trauma" developed into a "large hematoma" and infected wound to James Carter's right leg from February, 2015?**

*Response No. 12.*

Defendant objects to and disputes Plaintiff's assertion as vague, ambiguous, and a mischaracterization of the evidence to the extent that Plaintiff identifies words or phrases from multiple medical records to characterize Mr. Carter's injury.

Mr. Carter reported that "he hit his right shin against his wheelchair when standing up from the bed" and medical records show that "a hematoma formed over his right shin and has steadily grown."  Furthermore, medical records show that Mr. Carter may have bumped the wound on his bed, which developed into a lesion on his right calf that was extremely swollen with a big hematoma that developed quickly.

**INTERROGATORY No. 13.**

**Does Defendant acknowledge that one or more of its medical providers involved in the care of James Carter acted below the applicable standard of care and/or failed to act within the applicable standard of care?  If so, please identify any conduct below the standard of care and medical provider involved.**

*Response No. 13.*

Defendant contends the United States provided health care to Mr. Carter which conformed to all aspects of the medical standards of care.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which contain information regarding medical care provided to Mr. Carter, and the burden of ascertaining the answer falls equally on the parties.

Insofar as discovery is not complete, any answer to this interrogatory must be conditioned on what subsequent discovery may reveal.  In addition, Defendant is not responsible for the acts or omissions of independent contractors or of third parties who are not employees or agents of the United States.

## INTERROGATORY No. 14.

*State the facts upon which Defendant bases its "Second Affirmative Defense" that Plaintiff supposedly failed to exhaust her administrative remedies.*

### Response No. 14.

Defendant does not assert that the Estate of James Carter failed to exhaust its administrative remedies in its Answer to Plaintiff's First Amended Original Complaint.

## INTERROGATORY No. 15.

*Identify the "independent contractors" referred to in Defendant's "Fifth Affirmative Defense.*

### Response No. 15.

Defendant objects to this request on grounds that Defendant did not identify any independent contractors in its affirmative defense.  Instead, Defendant asserted that it has not waived sovereign immunity under the FTCA for any acts or omissions of its independent contractors.

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant identified all individuals likely to have discoverable information in its Initial Disclosures.  Each individual identified in Defendant's Initial Disclosures is a current or former employee, except Dr. Jaicus Solis.  Dr. Solis, a former surgical resident, was under the direction and control of the Defendant at the time of the events at issue in this case.  If Plaintiff identifies any additional person(s) not disclosed by either party, who Plaintiff contends is likely to have discoverable information with regard to her claims in this case, Defendant will determine whether such person is Defendant's employee.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which may contain the information requested and the burden of ascertaining the answer falls equally on the parties.

## INTERROGATORY No. 16.

*State the facts upon which Defendant bases its "Ninth Affirmative Defense of "contributory negligence" and "a danger" to which Plaintiff and/or James Carter supposedly "voluntarily exposed themselves."*

*Response No. 16.*

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which contain information regarding James Carter's acts and/or omissions related to the medical care provided by the Defendant and the burden of ascertaining the answer falls equally on the parties.

Upon information and belief as presently known, Defendant's Affirmative Defense of contributory negligence is based upon the following facts, including but not limited to:

(1)    Mr. Carter refused to participate in physical therapy and occupational therapy sessions;

(2)    Mr. Carter hit his leg against his wheelchair;

(3)    Mr. Carter bumped his toe; and

(4)    Mr. Carter failed to cooperate with the turn schedule.

## INTERROGATORY No. 17.

*State the facts upon which Defendant bases its "Tenth Affirmative Defense" that supposedly "Plaintiff and/or James Carter's negligence was the proximate case [sic] of and contributed to any … injuries or damages sustained."*

*Response No. 17.*

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which contain information regarding James Carter's acts and/or omissions related to the medical care provided by the Defendant and the burden of ascertaining the answer falls equally on the parties.

Upon information and belief as presently known, Defendant's Affirmative Defense of proximate cause is based upon the following facts, including but not limited to:

(1)     Mr. Carter refused to participate in physical therapy and occupational therapy sessions;

(2)     Mr. Carter hit his leg against his wheelchair;

(3)     Mr. Carter bumped his toe; and

(4)     Mr. Carter failed to cooperate with the turn schedule.

## INTERROGATORY No. 18.

*State the facts upon which Defendant bases its "Eleventh Affirmative Defense" that Plaintiff or James Carter "failed to mitigate" his injuries."*

*Response No. 18.*

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which contain information regarding James Carter's acts and/or omissions related to the medical care provided by the Defendant and the burden of ascertaining the answer falls equally on the parties.

Upon information and belief as presently known, Defendant's Affirmative Defense is based upon the following facts, including but not limited to:

(1)     Mr. Carter refused to participate in physical therapy and occupational therapy sessions;

(2)     Mr. Carter hit his leg against his wheelchair;

(3)     Mr. Carter bumped his toe; and

(4)     Mr. Carter failed to cooperate with the turn schedule.

## INTERROGATORY No. 19.

*State the facts upon which Defendant bases its "Twelfth Affirmative Defense" that "another actor's or actors' negligence was an intervening or superseding cause" of James Carter's injuries.*

*Response No. 19.*

Defendant is not presently aware of any acts or negligence by any third party. Insofar as formal discovery by way of depositions has yet to be undertaken, any answer to this interrogatory must be conditioned on what subsequent discovery may reveal.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which may contain the information requested and the burden of ascertaining the answer falls equally on the parties.

## INTERROGATORY No. 20.

*State the facts upon which Defendant bases its "Thirteenth Affirmative Defense" regarding "negligence acts or omissions or contributing negligence of third parties."*

### Response No. 20.

Defendant is not presently aware of any acts or negligence by any third party. Insofar as formal discovery by way of depositions has yet to be undertaken, any answer to this interrogatory must be conditioned on what subsequent discovery may reveal.

Pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to information produced pursuant to Defendant's Initial Disclosures and Defendant's responses to Plaintiff's discovery requests, which may contain the information requested and the burden of ascertaining the answer falls equally on the parties.

## VERIFICATION

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, that to the best of my knowledge, information and belief formed after reasonable inquiry, all answers in the foregoing document are true and correct.

Dated: April 12, 2017

_____

Jenny Mai
Staff Attorney
Department of Veterans Affairs
Dallas, TX

Dated: April 12, 2017

Respectfully submitted,

JOHN PARKER
UNITED STATES ATTORNEY

s/ *Marti Cherry*

Mary M. (Marti) Cherry
Assistant United States Attorney
Texas Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, Texas  75242
Telephone:   214-659-8600
Facsimile:   214-659-8807
E-mail:  mary.cherry@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served this 12th day of April

2017, via certified mail, return receipt requested, (# 7016-2140-0000-5059-1573) to

Plaintiff or Plaintiff's attorney of record at the following address:

D Bradley Kizzia
1910 Pacific Avenue
Suite 13000
Dallas, Texas 75201

_s/ *Marti Cherry*_

Mary M. (Marti) Cherry
Assistant United States Attorney

**Defendant's Response and Objections to Plaintiff's First Set of Interrogatories – Page 12 of 12**

# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


BARBARA DENNIS ON BEHALF OF   *
THE ESTATE OF JAMES CARTER    *
                              *
    Plaintiff,                *
                              * CIVIL ACTION NO.
VS.                           * 3:16-CV-3148-G-BN
                              *
UNITED STATES OF AMERICA      *
                              *
    Defendant.                *



***********************************
ORAL DEPOSITION OF
HKUN D. TUN, M.D.,
JULY 19, 2017
***********************************



        ORAL DEPOSITION OF HKUN D. TUN, M.D., a
witness produced at the instance of the Plaintiff, was
taken in the above-styled and -numbered cause on the
19th day of July, 2017, from 2:45 p.m. to 4:50 p.m.,
before Brooke Barr, CSR in and for the State of Texas,
reported by machine shorthand, at the United States
Attorney's Office, 1100 Commerce Street, 3rd Floor,
Dallas, Texas 75242, pursuant to the Federal Rules of
Civil Procedure and any provisions stated on the
record or attached hereto.

Page 38

1    at the VA Hospital, you said, the third cause of his

2    death was dysphagia/malnutrition.

3              Do you see that?

4        A.  Yes.

5        Q.  What is dysphagia?

6        A.  Dysphagia mean difficulty swallowing.

7        Q.  And if you look over to the right of that, it

8    shows approximate interval prior to death?

9        A.  Yes.

10       Q.  Okay.  So according to your death certificate

11   that you signed on November 2nd, 2015, in Mr. Carter's

12   case, you said that he had difficulty swallowing and

13   malnutrition for a month before he died; is that

14   right?

15       A.  Yes, that is correct.

16       Q.  How did you determine that Mr. Carter had

17   difficulty swallowing for a month before he died?  By

18   looking at his medical records?

19       A.  Yes, looking at the medical record.  And

20   another thing is, like, I know -- of course, we also

21   have like, constraint for the space.  So we cannot

22   write, like, say, 100 things.

23              Of course, I know that like, he has

24   problem with swallowing and he has painful swallowing

25   a little.  And of course, after he went through

Page 39

1    the endoscopy, we also got a diagnosis of like, ulcer.

2              But again, as you can imagine, you cannot

3    write ulcer, you cannot write like, painful

4    swallowing, everything, like -- you know, on a limited

5    space.  So I need to kind of summarize.

6         Q.  Okay.

7         A.  But again, I think like, on the dysphagia, we

8    also want to mention about the ulcers, and we also

9    want to mention about the pain, like, when he

10   swallowed.  That was the first time he mentioned,

11   like, around a month ago before he was transferred to

12   VA Medical Center.

13        Q.  But this is an official state record, isn't

14   it?  A death certificate, it's something that's filed

15   with the State of Texas, right?

16        A.  Yes.

17        Q.  So you want it to be accurate, right?

18        A.  Yes.

19        Q.  And you wouldn't sign it if you didn't

20   believe it was accurate.  In fact, you might get --

21   there might be some consequences if you were to sign a

22   death certificate that's not accurate and you knew it

23   was not accurate, right?

24        A.  Well, I'm not saying that it's not accurate.

25   I think you're putting your word -- mouth into my -- I

Page 40

1    mean, words in my mouth.  Okay.

2              Because like, he has like, multiple

3    medical problem, so I am just writing down the

4    condition that is contributing to his death.

5        Q.  Okay.  So you believed that for a month

6    before he died he has difficulty swallowing, right?

7    Or you wouldn't have said that in his death

8    certificate.

9        A.  Because I remember.  Like, before he died,

10   like, I know I have a discussion with the family.  And

11   of course, there was a problem.  So like, I need to

12   mention that there's some -- like a time duration.

13       Q.  Yeah.  Did you believe when you signed

14   Mr. Carter's death certificate that for a month prior

15   to his death, he had had or experienced difficulty

16   swallowing?

17       A.  Yes, the problem started like around a month

18   ago, yes.

19       Q.  Okay.  And you also wrote in the death

20   certificate that he suffered from malnutrition for

21   about a month before he died; is that right?

22       A.  Yes.

23       Q.  And was that true?

24       A.  Well, again, I said, like, I know -- I mean,

25   there was more issue going on.  I mean, just day

Page 41

1    before like, he died.  So again, I have a discussion

2    with the family, so I thought like, you know, it

3    should be included.

4        Q.  And you put those together.  So when you did

5    this death certificate on November 2nd, 2015, you were

6    certifying and believed that Mr. Carter had

7    malnutrition for about a month before he died because

8    he had difficulty swallowing, right?

9        A.  Yes.  And some day, you know, he just

10   refused.  I do not know whether he actually have

11   difficulty or not.  Like, I know he just kind of

12   refused.  And he refused to take the medication, he

13   refused to take the food, and then next day, he might

14   eat again.  So it's kind of irregular and

15   unpredictable.

16            But again, overall, I believe that like,

17   he might not be getting enough nutrition.  That's why

18   I need to talk to the family and see whether they are

19   interested in getting a feeding tube.

20       Q.  You've been licensed to practice medicine in

21   the State of Texas for a number of years, right?

22       A.  Yes.

23       Q.  And you have worked as a hospitalist at the

24   Dallas VA for over three years?

25       A.  Yes, that is correct.

Page 42

1      Q.  And do you think that a patient should ever

2  suffer from malnutrition for a month while being in a

3  hospital?  Should a hospital ever let that happen?

4      A.  Well, that depends.

5      Q.  Depends on what?

6      A.  Depends like, you know, like we said, like --

7  I mean, he went for the scope like on November 12.

8  And then, of course, like, you know -- I mean,

9  majority of the patient like, if we give them like, a

10 little bit more time, then they can eat.  So if they

11 can eat then, like we don't need to do any other

12 thing.

13          And then another thing is, like, you

14 know, at the same time, like, you know, he keep losing

15 blood and he needs like a blood transfusion, like a

16 total of like, 8 units.

17          So I know the GI doctor was also

18 following.  And usually, they don't even need to scope

19 again.  But in his case, like, it is different.  So

20 they want to like, go back and look again and make

21 sure that they don't miss anything.

22          And that -- at that time, they also

23 talked about seeing -- that they also saying like, I

24 mean, it's kind of like, blood oozing, like, from the

25 ulcer site.  And like, I mean, it is kind of like a

Page 43

 1    touch and go.  So they said, okay, give like, a liquid

 2    diet for now, and then like, they keep following.

 3              And another thing is, if you -- having

 4    like, you know, GI bleeding, then they cannot put the

 5    tube.  So it needs to be settled first.

 6        Q.  Did he have GI bleeding?

 7        A.  Yes, that's why he is losing blood, from the

 8    gut.  And there's no other way to lose blood.

 9        Q.  So but the other option was an IV, right?

10    You could have fed him through an IV, right?

11        A.  Yes.  But again, at that time, I wasn't

12    there.  Okay.  I am just seeing on the three days.

13        Q.  Okay.  All right.  But there was a medical

14    team there talking care of Mr. Carter, right?

15        A.  Yes.

16        Q.  Are you saying from your knowledge and

17    experience -- training, knowledge, and experience that

18    it is -- it is within the standard of care, it is

19    acceptable at the VA Hospital of Dallas to allow a

20    patient there to suffer from malnutrition for a month?

21        A.   No, I am not saying that he is suffering for

22    a month.  Another issue is -- there is more complex

23    than that.

24        Q.  Well, the death certificate said that he --

25    his malnutrition lasted for a month, right?  That is

Page 44

1    what it says.

2         A.   Okay.

3         Q.   Okay.  And that's what you signed, right?

4         A.   Yes.

5         Q.   Okay.  So listen to my question.  Based upon

6    your knowledge, training, and experience, is it your

7    testimony that it is within the standard of care at

8    the Dallas VA, it is acceptable at the Dallas VA

9    for -- to allow a veteran patient -- who served his

10   country, who is at the hospital being treated there,

11   to suffer from malnutrition for a month; is that

12   acceptable?

13        A.   Okay.  Again, let me rephrase.  Like, I can

14   only answer like, on days I am seeing him.  I cannot

15   tell you like, what VA is supposed to do.  I cannot

16   tell you what other doctor is supposed to do.  I'm not

17   a GI doctor.  I am not a specialist.  So I can only

18   give you from the perspective of --

19        Q.   Okay.  I am not just focusing on you.  I

20   don't mean to do that, Doctor.  I just want to know

21   your opinion.

22             You have a team of people.  You have

23   already talked about that, that are taking care or

24   supposed to be taking care of Mr. Carter.  So without

25   focusing on any specific medical provider, just

Page 45

1   generally speaking, would you -- is it your testimony

2   that it is acceptable, it is within the standard of

3   care at the Dallas VA Medical Center to allow a

4   patient to suffer from malnutrition there for a month;

5   is that acceptable?

6       A.   Okay.  But before answering that question,

7   like, I know -- you need to hold -- know the whole

8   picture.  Because when it was started, like, a month

9   ago when he start complaining about the pain whenever

10  he swallow, like, the doctor, Dr. James, consulted the

11  GI doctor.

12            So first, like, it -- when the GI come,

13  they did the evaluation and give their opinion.  So at

14  that time, what they say is, like, you know, he is old

15  and he is frail.  So what they are saying is like, by

16  doing the scope with the anesthesia, it might put him

17  under too much risk.

18            So they said, like, let's do

19  less-invasive test.  And like, they do the barium

20  swallow test instead.  And they didn't need -- they

21  needed to do it twice.  And of course, there are some

22  delay.  Because like, some day, like he was supposed

23  to go to the test, but he wasn't NPO and then like,

24  you know, after that, like after barium swallow, like,

25  you know, seems like he is continuing having the

Page 46

1    problem.

2              They changed their mind and they say,

3    okay, this time, let's do the scope.  But again,

4    before doing the scope, one day he was supposed to be

5    NPO, and then there was a documentation that patient

6    doesn't want to go through the test again.

7              So like, you know -- I mean, they

8    couldn't do the test.  So like, you know, those are

9    the things like, actually going on.

10             And after that, like I said, he was

11   bleeding and he was receiving multiple blood

12   transfusions.  So I'm not sure whether like, you know,

13   you can say it's kind of standard of care or not.

14             But of course, there is like a one-month

15   duration total.  But a lot of things happening at the

16   time.

17             MR. KIZZIA:  Objection; nonresponsive.

18        Q.  (BY MR. KIZZIA)  Can I get an answer to my

19   question?  Is that within the standard of care?  Is it

20   acceptable to allow a patient at the Dallas VA to go

21   for a month suffering from malnutrition?

22        A.  But what would you do if patient refuse?

23        Q.  If they what?

24        A.  If patient refuse, what are you going to do?

25        Q.  Refuse what?

Page 47

1      A.  Refuse to go for like, a scope.  Like, you

2    know, he was supposed to go for the scope like you

3    know earlier than that.  And then they were first he

4    told the -- the doctor over there that he doesn't want

5    it.

6      Q.  Okay.  You could have done a VA.  You could

7    have provided nutrition through a VA, right?  IV, I

8    mean you could have provided nutrition through an IV.

9      A.  That might be an option.  But again, like, I

10   know before -- I mean, jumping for the IV, if he can

11   eat, then there is no reason to start an IV.

12            But again, another thing is like, in

13   order to start the IV, you, again, need to go through

14   like another invasive procedure.  He needs to have a

15   central line, a PICC line in order to do that.  You

16   cannot just give him through a line.  You cannot do it

17   as --

18     Q.  I would like an answer to my question,

19   though.

20            Is it acceptable, is it within the

21   standard of care?  It either is, yes, it is not, no,

22   or you're saying, normally it's not within the

23   standard of care, but in his case it was.

24     A.  Again, like, I do not feel comfortable just

25   answering for the three days like I have encounter

Page 48

1    with him.  I cannot -- I cannot answer like I know --

2         Q.  So you don't --

3         A.  -- I do not know.

4         Q.  Is that your answer?  You don't know --

5         A.  Yes.

6         Q.  -- whether or not it's acceptable or within

7    the standard of care?

8         A.  Yes.

9         Q.  Okay.  Is it acceptable within the standard

10   of care to allow a patient at the Dallas VA to die of

11   starvation -- starvation?

12        A.  No.

13        Q.  Okay.  That's not -- that would not been

14   within the standard of care, right?

15        A.  No.

16        Q.  Okay.  Why -- did Mr. Carter have

17   malnutrition for a month at the VA Hospital in Dallas?

18        A.  Because he has multiple issues like -- he

19   need to deal with that.

20        Q.  Did he -- did you ever order that he receive

21   nutrients through IV?

22        A.  No, I did not order.  Because first of all,

23   in order to start on a -- total IV nutrition, we need

24   the consent from either patient or the family.  So

25   like, you know -- I mean, when that situation arises

Page 49

1    on the 24th when I talked to the family like, you

2    know -- I mean, I needed that consent.

3               And another thing is, at that time, like,

4    they choose for the other procedure, which is the

5    feeding tube through the stomach.

6         Q.   You offered those options on the 24th?

7         A.   Yes.

8         Q.   Why didn't you offer them sooner?

9         A.   Well, because on 23rd, like, technically, he

10   is still taking some pear and some food.  So if you

11   still eating, then like, I know we rather want to --

12   wait and see how he is doing.

13        Q.   What is your basis for saying that?  You

14   didn't feed him yourself, did you?

15        A.   Sorry?

16        Q.   You didn't feed him yourself, did you?

17   Mr. Carter, did you feed him?

18        A.   No, I did not feed him.

19        Q.   Okay.  Did you watch him being fed on the

20   23rd?

21        A.   No, he is the responsibility of the nurse.

22        Q.   Right.  And so do you know whether or not he

23   was fed on the 23rd or not?

24        A.   But nurse told me like, he take the

25   medication and he ate.

Page 91

1      A.   That is correct.  But like, if you just look

2    at the -- a few lines above, it is -- it is also

3    mentioned that like, you know -- I mean, he was on

4    Coumadin.  So it is different.

5              When you're on a blood thinner, then even

6    if it started with a nick, then it can progress into

7    like a hematoma very quickly, because your blood is

8    thin, so you're prone to injury and bleeding.

9              (Exhibit 24 marked.)

10     Q.   (BY MR. KIZZIA) Let me show you what I've

11   marked for identification purposes as Exhibit 24.

12     A.   Okay.

13     Q.   Which are -- top page is Page 2402 of

14   Mr. Carter's VA medical records.

15             Do you see down there at the bottom is a

16   note by Jennifer James, dated April 23rd, 2015?

17     A.   Okay.

18     Q.   And you said you knew her, right?

19     A.   Yeah, I --

20     Q.   You talked to her?

21     A.   I talked to her over the phone.  But I never

22   met her in person, because she works at the different

23   building.

24     Q.   And in her note here, about the -- the fourth

25   line down, she said, "Mr. Carter's anemia was thought

Page 92

 1    to be exacerbated by a large, right leg hematoma,

 2    which he had previously sustained."

 3              Do you see that?

 4        A.  Yes.

 5        Q.  How is it that Mr. Carter's large leg wound

 6    may have exacerbated his anemia?

 7        A.  Because he's -- he lost blood.  Like, he --

 8    he bled into that hematoma.

 9        Q.  Because why?

10        A.  He bled into that hematoma.

11        Q.  Okay.

12        A.  So that is kind of a blood collection like

13    underneath the skin.

14        Q.  Okay.  Let's take a five-minute break.  Let

15    me look at my notes here.

16              (Recess taken 4:36 p.m. to 4:43 p.m.)

17        Q.  (BY MR. KIZZIA)  All right.  Dr. Tun, we took

18    another short break.  Is there anything about your

19    testimony that you believe is incorrect and needs to

20    be corrected?

21        A.  No, I don't need to change it.

22        Q.  Okay.  If a person, essentially, starves to

23    death, do they ultimately -- can that ultimately cause

24    cardiac arrest?

25        A.  Well, cardiac arrest, it can be from many

# EXHIBIT C

# Progress Notes

DIAGNOSIS: Acute CHF (428.0)
DATE OF Admission : Nov 11,2014

PRECAUTIONS/CONTRAINDICATIONS:

None
Weight Bearing Status Precautions: (REQUIRED)
None. Full Weight Bearing/No Weight Bearing Restrictions

TIME IN: 2:15
TIME OUT: 2:45

REASON FOR CONSULT/REFERRAL:
Decreased strength-strengthening exercises,progressive resisted/
strengthening exercises.
Decreased endurance-provide cardiovascular activities to improve
tolerance to activities out of bed.
Other (specify):
Pt walks with a walker but is deconditioned


HISTORY OBTAINED FROM:
Patient, Chart
patient is fair historian

MEDICAL PROBLEMS: Hypokalemia (SCT 43339004)
Chronic otitis externa (ICD-9-CM 380.23)
CHF (ICD-9-CM 428.0)
Keratosis (ICD-9-CM 701.1)
Chronic Kidney Disease, Unspecified (ICD-9-CM 585.9)
ABDOM AORTIC ANEURYSM (ICD-9-CM 441.4)
OCCL&STEN/CAR ART W/O CRB INF (ICD-9-CM 433.10)
Aneurysm, Aorta, Abdominal (ICD-9-CM 441.4)
Benign Localized Hyperplasia of Prostate with Urinary obstruction and other
lowe (ICD-9-CM 600.21)
METATARSALGIA (ICD-9-CM 726.70)
ONYCHOGRYPHOSIS/ONYCHOLYSIS (ICD-9-CM 703.8)
VENOUS DISEASE (ICD-9-CM 459.9)
Metatarsalgia (ICD-9-CM 726.70)
SENILE NUCLEAR CATARACT (ICD-9-CM 366.16)
INCIPIENT CATARACT (ICD-9-CM 366.12)
Other Follow-Up Examination (ICD-9-CM V67.59)
Issue of Repeat Prescriptions (ICD-9-CM V68.1)
Coronary Artery Disease (ICD-9-CM 414.9)
Dyspnea (ICD-9-CM 786.05)
Edema (ICD-9-CM 782.3)
Hypertension (ICD-9-CM 401.9)
Nocturia (ICD-9-CM 788.43)
Hypothyroidism (ICD-9-CM 244.9)

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| CARTER,JAMES EARNEST<br>2802 DOVE MEADOW DRIVE<br>GARLAND, TEXAS  75043 | Printed at DALLAS VA MEDICAL CENTER |

# Progress Notes

```
4.PATIENT SPENDS MOST OF HIS TIME IN BED      YES[x ]=1   NO[ ]=0
5.SKIN BREAK DOWN PRESENT------------------- YES[x ]=1   NO[ ]=0
6.ALTERED MENTAL STATUS / FORGETFUL -------- YES[x ]=1   NO[ ]=0
7.MALNOURISHED, LIMITED ORAL INTAKE OR OBESE  YES[ ]=1   NO[x ]=0
8.STATUS POST FLAP OR SKIN GRAFT ----------- YES[ ]=1   NO[x ]=0
** AIR MATTRESS RECOMMENDED IF TOTAL SCORE IS 5 OR MORE.
TOTAL SCORE: 6
AIR MATTRESS ORDERED: yes                    TIME:1:20
PROVIDER: sizewise                           PHONE NO:
```

patient states wound care dressing already changed today. Will follow up tomorrow.

```
/es/ JOYCE A SARPONG
RN
Signed: 04/23/2015 13:28


Receipt Acknowledged By:
04/23/2015 14:30         /es/ JENNIFER S. JAMES, MD
                              STAFF PHYSICIAN
04/23/2015 13:40         /es/ MELANIE RUE,PA-C
                              PHYSICIAN ASSISTANT
```

```
 LOCAL TITLE: HISTORY & PHYSICAL
STANDARD TITLE: H & P NOTE
DATE OF NOTE: APR 23, 2015@12:53   ENTRY DATE: APR 23, 2015@12:53:40
     AUTHOR: JAMES,JENNIFER S    EXP COSIGNER:
     URGENCY:                        STATUS: COMPLETED
```

    *** HISTORY & PHYSICAL Has ADDENDA ***

CC: wound care

HPI: Mr. Carter is an 86 yo veteran with HFpEF (EF 59%), CAD s/p cABG, CKD, anemia, afib, hypertension, hypothyroidism who had been undergoing rehab in the CLC-A when he was found to have AKI and anemia. He was admitted to the Dallas VAMC. Anemia was thought to be exacerbated by large right leg hematoma, which he had previously sustained. He was transfused a total of 6 units prbc during this most recent hospitalization, though anemia eventually stabilized. He was also treated for HF exacerbation. Cardiology was consulted and he was put on IV lasix, which was eventually transitioned to PO. Repeat BNP 395 showed improvement, though chest xray prior to discharge continued to show moderately severe congestion. Clinically pt denied any significant shortness of breath.  Pt was also noted to have new onset afib, though he was not placed on coumadin at the time due to the hematoma. AKI also improved, returning to pt's baseline. He had also developed a sacral pressure ulcer and is now being transferred to the CLC-B unit for wound care of the sacral and right leg wounds.

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
CARTER,JAMES EARNEST
2802 DOVE MEADOW DRIVE
GARLAND, TEXAS  75043

VISTA Electronic Medical Documentation
Printed at DALLAS VA MEDICAL CENTER

# EXHIBIT D



APP. 034

# EXHIBIT E



# EXHIBIT F

# STATE OF TEXAS
## CERTIFICATION OF VITAL RECORD

# DEPARTMENT OF STATE HEALTH SERVICES
## VITAL STATISTICS UNIT

TEXAS DEPARTMENT OF STATE HEALTH SERVICES - VITAL STATISTICS

STATE OF TEXAS | CERTIFICATE OF DEATH | STATE FILE NUMBER 142-15-170681

1. LEGAL NAME OF DECEASED (Include AKA's, if any) (First, Middle, Last): **JAMES EARNEST CARTER**

2. SEX: **MALE**

4. DATE OF BIRTH: **AUGUST 9, 1928**

5. AGE Last Birthday (Years): **87**

3. DATE OF DEATH ACTUAL OR PRESUMED: **NOVEMBER 25, 2015**

6. BIRTHPLACE (City & State or Foreign Country): **CYPRESS, IL**

8. SOCIAL SECURITY NUMBER: **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**

9. MARITAL STATUS AT TIME OF DEATH: ☒ Widowed

7. SURVIVING SPOUSE'S NAME (If wife, give name prior to first marriage)

10a. RESIDENCE STREET ADDRESS: **2802 DOVE MEADOW DR**

10b. COUNTY: **DALLAS**

10a. STATE: **TEXAS**

10f. ZIP CODE: **75043**

10c. CITY OR TOWN: **GARLAND**

10g. INSIDE CITY LIMITS? ☒ Yes ☐ No

11. FATHER'S NAME PRIOR TO FIRST MARRIAGE: **NORVELL CARTER**

12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE: **LULA JOHNSON**

13. PLACE OF DEATH (CHECK ONLY ONE)

IF DEATH OCCURRED IN A HOSPITAL: ☒ Inpatient ☐ ER/Outpatient ☐ DOA

IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: ☐ Hospice Facility ☐ Nursing Home ☐ Decedent's Home ☐ Other (Specify)

14. COUNTY OF DEATH: **DALLAS**

15. CITY/TOWN, ZIP: **DALLAS, 75218**

16. FACILITY NAME (If not institution, give street address): **VA HOSPITAL**

17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED: **BARBARA DENNIS - DAUGHTER**

18. MAILING ADDRESS OF INFORMANT (Street and Number, City, State, Zip Code): **2802 DOVE MEADOWDR, GARLAND, TX 75043**

19. METHOD OF DISPOSITION: ☐ Burial ☒ Cremation ☐ Donation ☐ Entombment ☐ Removal from state ☐ Other (Specify)

20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH: **FEMECCA JACKSON ,BY ELECTRONIC SIGNATURE - 113608**

21. ☐ Unknown — Section: UNIT III, Block, Lot TIER C-43, Space CRYPT 4

22. PLACE OF DISPOSITION (Name of cemetery, crematory, other place): **LAUREL LAND MEMORIAL PARK**

23. LOCATION (City/Town, and State): **DALLAS, TX**

24. NAME OF FUNERAL FACILITY: **LAUREL LAND FUNERAL HOME**

25. COMPLETE ADDRESS OF FUNERAL FACILITY (Street and Number, City, State, Zip Code): **6000 S.R.L THORNTON FREEWAY, DALLAS, TX 75232**

26. Certifying physician-To the best of my knowledge death occurred due to the cause(s) and manner stated. ☒ (Check only one)
☐ Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion death occurred at the time, date and place, and due to the cause(s) and manner stated.

27. SIGNATURE OF CERTIFIER: **HKUN K. TUN , BY ELECTRONIC SIGNATURE**

28. DATE CERTIFIED (mm-dd-yyyy): **DECEMBER 2, 2015**

29. LICENSE NUMBER: **ARIZONA 35724**

30. TIME OF DEATH (Actual or presumed): **05:00 AM**

31. PRINTED NAME, ADDRESS OF CERTIFIER (Street and Number, City, State, Zip Code): **HKUN K. TUN 4500 S. LANCASTER ROAD, DALLAS, TX 75216**

32. TITLE OF CERTIFIER: **MD**

33. PART I - ENTER THE CHAIN OF EVENTS - DISEASES, INJURIES, OR COMPLICATIONS - THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON EACH LINE.

| | | Approximate Interval Onset to death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) → | a. **CARDIAC ARREST** | **5 MINUTES** |
| | Due to (or as a consequence of): | |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | b. **CORONARY ARTERY DISEASE** | **1 YEAR** |
| | Due to (or as a consequence of): | |
| | c. **DYSPHAGIA/MALNUTRITION** | **1 MONTH** |
| | Due to (or as a consequence of): | |
| | d. | |

PART 2. ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART 1: **N/A**

34. WAS AN AUTOPSY PERFORMED? ☐ Yes ☒ No

35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☐ No

36. MANNER OF DEATH: ☒ Natural ☐ Accident ☐ Suicide ☐ Homicide ☐ Pending Investigation ☐ Could not be determined

37. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ No ☐ Probably ☒ Unknown

38. IF FEMALE: ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to one year before death ☐ Unknown if pregnant within the past year

39. IF TRANSPORTATION INJURY, SPECIFY: ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify)

40a. DATE OF INJURY (mm-dd-yyyy)

40b. TIME OF INJURY

40c. INJURY AT WORK? ☐ Yes ☐ No

40d. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area)

40e. LOCATION (Street and Number, City, State, Zip Code)

40f. COUNTY OF INJURY

41. DESCRIBE HOW INJURY OCCURRED

42a. REGISTRAR FILE NO.: **0210000**

42b. DATE RECEIVED BY LOCAL REGISTRAR: **DECEMBER 3, 2015**

42c. REGISTRAR: **REGISTRAR - CITY OF DALLAS, ELECTRONICALLY FILED**

EDR NUMBER: 000001907654

LHA

VS-112 REV 1/2006

QA07114945

This is a true and correct reproduction of the original record as recorded in this office. Issued under authority of Section 191.051, Health and Safety Code.

ISSUED   DEC 04 2015

★ ★ ★

*Geraldine L. Harris*

GERALDINE L. HARRIS
STATE REGISTRAR

**WARNING: THIS DOCUMENT HAS A DARK BLUE BORDER AND A COLORED BACKGROUND**

THE STATE OF TEXAS.

DEPARTMENT OF STATE HEALTH SERVICES · VITAL STATISTICS

American Bank Note Company

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BARBARA DENNIS on behalf of the Estate of JAMES CARTER** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **VS.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO
<u>DEFENDANT UNITED STATES OF AMERICA</u>**

To:  Defendant United States of America, by and through its attorney of record, Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

Plaintiff Barbara Dennis on behalf of the Estate of James Carter serves the following First

Requests for Production upon Defendant United States of America pursuant to Rule 34 of the

Federal Rules of Civil Procedure. You are requested to produce for inspection and copying the

documents responsive to each Request within thirty (30) days from the date of service at the offices

of Kizzia Johnson PLLC, 1910 Pacific Ave., Suite 13000, Dallas, Texas 75201.

Respectfully submitted,


*/s/ D. Bradley Kizzia*
**D. BRADLEY KIZZIA**
State Bar No. 11547550
bkizzia@kjpllc.com
**NICHOLAS D. CUSTRED**
State Bar No. 24101664
ncustred@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

**ATTORNEYS FOR PLAINTIFF**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the 14th day of March, 2017, in accordance with the Federal Rules of Civil Procedure.


*/s/ D. Bradley Kizzia*
**D. BRADLEY KIZZIA**

# I.

## DEFINITIONS

1.      "**Defendant**," "**USA**," "**you**," and/or "**your**" means and includes United State of America, and includes any person acting or purporting to act on your behalf or under your control.

2.      "**Dallas VA**" means and includes The Dallas VA Medical Center located at 4500 S. Lancaster Rd., Dallas, TX 75216, and includes any person acting or purporting to act on its behalf or under its control.

3.      "**Plaintiff**" means and includes Plaintiff Barbara Dennis on behalf of the Estate of James Carter.

4.      "**James Carter**" means James Ernest Carter, Decedent, that was admitted to the Dallas VA Medical Center on November 11, 2014, until his death on November 25, 2015.

5.      "**Document**" refers to and includes every writing or record of any type and description that is in your possession, control or custody, including without limitation, correspondence, memoranda, interoffice communications, stenographic or hand written notes, drafts, studies, publications, invoices, ledgers, journals, books, records, accounts, pamphlets, voice recordings, reports, surveys, statistical compilations, work papers, data processing cards, computer tapes or printouts, and/or all copies of each which contain any other writing or recordings of any kind which does not appear on the original or on any other copy. To the extent that the information exists within a computer or a computer recorded medium, you are requested to reduce the information to paper copy. "Document" does not include confidential attorney-client communications, attorney work product, or purely consultory expert reports.

6.      "**Identify**" means:

        (a)      with respect to individuals: the name, address and telephone number of the individual;

        (b)      with respect to a corporation or business entity: the name, address and telephone number of the corporation or business entity; and

        (c)      with respect to documents: the type of document, a brief description of the contents of the document, the date of the document, the person to whom the document was sent, and the name, address and telephone number of the present custodian of the document.

8.      "**Lawsuit**" means the case styled Civil Action No. 3:16-cv-3148-G-BN; Barbara Dennis on behalf of the Estate of James Carter v. United States of America; In The United States District Court for the Northern District of Texas, Dallas Division.

# I.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**   Please produce true, correct, and legible copies of all documents concerning any communication by you or your representatives and Plaintiff in this case in any way concerning Plaintiff and/or James Carter or the acts or omissions that serve as the basis of this lawsuit (other than your attorneys in this lawsuit).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**   Please produce true, correct, and legible copies of all documents, communications, and other tangible items concerning Plaintiff and/or James Carter that were created or received before this suit with filed.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**   Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between Plaintiff and the Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**   Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between James Carter and the Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**   Please produce true, correct, and legible copies of any other lawsuits, demands, and/or claims filed against the Dallas VA Medical Center in the last ten (10) years, which contain allegations substantially similar to those allegations made basis of this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**   Please produce true, correct, and legible copies of all statements, representations, or admissions made by Plaintiff discussing or regarding this lawsuit, any Defendant, or any claims or defenses made by or on behalf of any party.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**   Please produce true, correct, and legible copies of all documents referred to or relied upon by you in preparing the answers to Interrogatory Nos. 3-5 of Plaintiff's First Set of Interrogatories to Defendant United States of America, which were served upon you along with these First Requests for Production.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**   Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 when a patient is dropped and/or falls while under its care and supervision.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**   Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient has the proper food and nutrition while under its care and supervision.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient is receiving the proper prescribed medications and amounts for same for medical conditions and illnesses while under its care and supervision.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:** Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at Dallas VA Medical Center from November 11, 2014 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:** Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:** Please produce true, correct, and legible copies of all contracts, agreements, records, and/or documents that reflect Dallas VA's business and/or other relationship with the VA Community Living Center.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:** Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Medical Center from November 11, 2014 to present.

**REQUEST FOR PRODUCTION NO. 16:** Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that evidence your claim that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that Plaintiff or Carter failed to mitigate same," as stated in Defendant United States of America's Original Answer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:** Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that You contend substantiate and support the assertion that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that another actor's or actors' negligence was an intervening or superseding cause of the alleged injuries," as stated in Defendant United States of America's Original Answer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 1.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 2.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 6.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 7.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 8.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 9.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 10.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 11.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 12.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 13.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 14.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 15.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 16.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 17.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 20.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(a) "Medical Records of James Carter."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(b) "Administrative claim file."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(c) "Policies and procedures applicable to the claims at issue."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Mildred Padilla, PT.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Betsy Lucena, OTR.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ansey John, RN.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lee Ann Jones, RN

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jaicus Solis, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Candice Shewmake, RN.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lakshmi Sakthivelnathan, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Josh Williams, RN.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Melanie Rue, PA.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Anca Rohner, PA-C.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ali Pitafi, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Batool Imtiaz, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Shemsu Balker, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ishak A. Mansi, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jennifer James, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Zeeshan Ramzan, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Henry Ntende, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Susan Hedayati, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jonathan Dowell, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Hkun Tun, MD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:** Please produce true, correct, and legible copies of any reports, reviews, or evaluations of the care provided by Defendant to James Carter, where such record or document was prepared before this suit was filed.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:** Please produce true, correct, and legible copies of any criticism, poor evaluation, disciplinary action, and/or other negative review of any of the medical providers involved in the care of James Cater, where such records of document were prepared before this suit was filed.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter received proper nutrition during the last thirty (30) days that he was under Defendant's medical care.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter's nutritional needs during the last thirty (30) days of his life was being directed or supervised by a qualified dietician.

**RESPONSE:**

APP. 050

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BARBARA DENNIS on behalf of the Estate of JAMES CARTER** | § § § | |
| **Plaintiff,** | § § § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **VS.** | § § | |
| **UNITED STATES OF AMERICA,** | § § | |
| **Defendant.** | § § | |

## PLAINTIFF'S NOTICE OF DEPOSITION OF DEFENDANT DALLAS VA MEDICAL CENTER'S CORPORATE REPRESENTATIVE WITH SUBPOENA DUCES TECUM

TO:   Defendant United States of America, by and through its attorney of record, Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiff Barbara Dennis will take the oral deposition of Defendant Dallas VA Medical Center

("Defendant" and/or "Dallas VA"), on Wednesday, July 19, 2017 at 3:00 p.m., at the offices of

Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas,

Texas 75242.

Defendant Dallas VA Medical Center is directed to designate a person or persons to

testify on its behalf on the following matters:

1.   The Defendant's amended answer and including the denials and affirmative defenses stated therein.
2.   Defendant's discovery responses, including its interrogatory answers.

Furthermore, Defendant is required to bring with him/her to the deposition the items listed in Exhibit A.

The deposition may continue from day to day until completed.

**PLAINTIFF'S NOTICE OF DEPOSITION OF CORPROATE REPRESENTATIVE**       P a g e | 1

The deposition will be recorded stenographically, and may be recorded on videotape/digital recording. The stenographic recording will be conducted by Elite Deposition Technologies, or its designated certified court reporter and/or videographer.

Respectfully submitted,

**D. BRADLEY KIZZIA**
State Bar No. 11547550
brad@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the /6ᵗʰday of June, 2017, in accordance with the Federal Rules of Civil Procedure.

**D. BRADLEY KIZZIA**

# EXHIBIT A

## I.

## DEFINITIONS

1. "**Communication**" means any transmission or exchange of information either orally or in writing, and includes without limitation, any conversation, letter, note, memorandum, intra-firm or intra-office correspondence, telephone calls, telegraphs, telexes, telecopies, facsimile transmissions, cables, conferences, tape recordings, discussions or face-to-face communications. Notwithstanding the foregoing, nothing in this definition of "Communication" shall be construed to include privileged communications between Defendant and his legal counsel.

2. "**Communications Records**" means Documents (as defined herein) reflecting the existence or the contents of a communication, including, without limitation: (i) correspondence received; (ii) copies of correspondence sent; (iii) notes, recordings, file memoranda, or other documents reflecting the existence or contents of any conversation or other communication; (iv) telephone call slips, telephone logs, telecopy logs, telecopy cover sheets, long distance charge sheets, telex charge records, telephone bills, or any other document reflecting the existence or contents of telephone conversations or electrical communications; and (v) work flow logs, calendars, diaries, filing logs, tickler cards, or other records reflecting communications received, sent, or requiring action.

3. **"Defendant", "Dallas VA Medical Center", "you", or "your"** shall mean Defendant Dallas County Hospital District d/b/a Dallas VA Medical Center Health & Hospital System, and includes any person acting or purporting to act on its behalf or under its control, including, but not limited to, all agents, employees, officers, and directors.

4. "**Document**" as used herein shall have broad meanings, and shall include without

limitation, any and all manner of written, typed, printed, reproduced, filmed or recorded material, electronic messages, digital, analog or microwave impulses or signals, telecopies, telexes, data compilations, computer output and all sound recordings, photographs, pictures, plans, drawings or other representations of any kind pertaining, describing, referring or relating directly or indirectly, in whole or in part, to the subject matter of each paragraph of each Request, and from which information can be obtained. The term also includes any form of written communications records whether sent or received and all non-identical copies of originals. A draft of a non-identical copy is a separate Document within the meaning of this term.

The term also includes communications not only in words, but in symbols, pictures, sound recordings, film, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems. The **term expressly includes any and all electronic data in any form, including e-mails, text messages and metadata**. If the information is kept in a computer or informational storage or retrievable system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

Further, the term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate by-laws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memoranda recording telephone or in-person conferences, manuals, books, press releases, purchase orders, records, schedules, memos of interviews, evaluations, written reports of tests or experiments, public relations releases, telegraphs, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

Notwithstanding the foregoing, nothing in this definition of "Document" shall be construed to include privileged communications between Defendant and his legal counsel or documents constituting attorney work product.

5. "**Identify**," a direction to "**identify,**" or any form of the word "**identify**":

(a) When used in reference to a <u>Document</u> (as defined herein), means to state its date, its author, the type of document (e.g. letter, memorandum, telegram, telex, chart, photograph, sound reproduction, etc.), any identifying numbers affixed to it, or if this information is not available, some other means of identifying it, and its present location and the name of each of its present custodians.

(b) When used in reference to a <u>natural person</u>, means to state his or her full name, present or last known residence or business address and telephone number.

(c) When used in reference to an <u>entity</u>, means to state the type of entity and the address of its principal place of business.

(d) When used in reference to a <u>Communication</u> (as defined herein), means to state the date of the communication, the type of the communication (i.e., telephone conversation, meeting, or other oral utterances), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, the identity of each person present when it was made and the subject matter discussed.

6. "**Person**" means any individual, firm, partnership, joint venture, association, corporation, or any other type of entity.

7. **"Plaintiff", "James Carter", or "Carter"** shall refer to Plaintiff James Carter.

8. "**Relates to**" means, in whole or in part, constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to the object or item at issue.

## II.
## REQUESTS

REQUEST 1:  Please produce true, correct, and legible copies of all documents concerning any communication by you or your representatives and Plaintiff in this case in any way concerning Plaintiff and/or James Carter or the acts or omissions that serve as the basis of this lawsuit (other than your attorneys in this lawsuit).

REQUEST 2: Please produce true, correct, and legible copies of all documents, communications, and other tangible items concerning Plaintiff and/or James Carter that were created or received before this suit with filed.

REQUEST 3: Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between Plaintiff and the Defendant.

REQUEST 4: Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between James Carter and the Defendant.

REQUEST 5: Please produce true, correct, and legible copies of any other lawsuits, demands, and/or claims filed against the Dallas VA Medical Center in the last ten (10) years, which contain allegations substantially similar to those allegations made basis of this lawsuit.

REQUEST 6: Please produce true, correct, and legible copies of all statements, representations, or admissions made by Plaintiff discussing or regarding this lawsuit, any Defendant, or any claims or defenses made by or on behalf of any party.

REQUEST 7: Please produce true, correct, and legible copies of all documents referred to or relied upon by you in preparing the answers to Interrogatory Nos. 3-5 of Plaintiff's First Set of Interrogatories to Defendant United States of America, which were served upon you along with these First Requests for Production.

REQUEST 8: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 when a patient is dropped and/or falls while under its care and supervision.

REQUEST 9: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA

Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient has the proper food and nutrition while under its care and supervision.

REQUEST 10: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient is receiving the proper prescribed medications and amounts for same for medical conditions and illnesses while under its care and supervision.

REQUEST 11: Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at Dallas VA Medical Center from November 11, 2014 to present.

REQUEST 12: Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

REQUEST 13: Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

REQUEST 14: Please produce true, correct, and legible copies of all contracts, agreements, records, and/or documents that reflect Dallas VA's business and/or other relationship with the VA Community Living Center.

REQUEST 15: Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Medical Center from November 11, 2014 to present.

REQUEST 16: Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that evidence your claim that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that Plaintiff or Carter failed to mitigate same," as stated in Defendant United States of America's Original Answer.

REQUEST 17: Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that You contend substantiate and support the assertion that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that another actor's or actors' negligence was an intervening or superseding cause of the alleged injuries," as stated in Defendant United States of America's Original Answer.

REQUEST 18: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 1.

REQUEST 19: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 2.

REQUEST 20: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 6.

REQUEST 21: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 7.

REQUEST 22: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 8.

REQUEST 23: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 9.

REQUEST 24: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 10.

REQUEST 25: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 11.

REQUEST 26: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 12.

REQUEST 27: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 13.

REQUEST 28: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 14.

REQUEST 29: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 15.

REQUEST 30: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 16.

REQUEST 31: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 17.

REQUEST 32: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 20.

REQUEST 33: Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(a) "Medical Records of James Carter."

REQUEST 34: Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(b) "Administrative claim file."

REQUEST 35: Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(c) "Policies and procedures applicable to the claims at issue."

REQUEST 36: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Mildred Padilla, PT.

REQUEST 37: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Betsy Lucena, OTR.

REQUEST 38: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ansey John, RN.

REQUEST 39: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lee Ann Jones, RN

REQUEST 40: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jaicus Solis, MD.

REQUEST 41: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Candice Shewmake, RN.

REQUEST 42:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lakshmi Sakthivelnathan, MD.

REQUEST 43:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Josh Williams, RN.

REQUEST 44:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Melanie Rue, PA.

REQUEST 45:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Anca Rohner, PA-C.

REQUEST 46:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ali Pitafi, MD.

REQUEST 47:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Batool Imtiaz, MD.

REQUEST 48:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Shemsu Balker, MD.

REQUEST 49:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ishak A. Mansi, MD.

REQUEST 50:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jennifer James, MD.

REQUEST 51:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Zeeshan Ramzan, MD.

REQUEST 52:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Henry Ntende, MD.

REQUEST 53: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Susan Hedayati, MD.

REQUEST 54: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jonathan Dowell, MD.

REQUEST 55: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Hkun Tun, MD.

REQUEST 56: Please produce true, correct, and legible copies of any reports, reviews, or evaluations of the care provided by Defendant to James Carter, where such record or document was prepared before this suit was filed.

REQUEST 57: Please produce true, correct, and legible copies of any criticism, poor evaluation, disciplinary action, and/or other negative review of any of the medical providers involved in the care of James Cater, where such records of document were prepared before this suit was filed.

REQUEST 58: Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter received proper nutrition during the last thirty (30) days that he was under Defendant's medical care.

REQUEST 59: Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter's nutritional needs during the last thirty (30) days of his life was being directed or supervised by a qualified dietician.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BARBARA DENNIS on behalf of the Estate of** | § | |
| **JAMES CARTER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **VS.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S NOTICE OF DEPOSITION OF HKUN D. TUN, M.D WITH SUBPOENA DUCES TECUM

TO:   Defendant United States of America, by and through its attorney of record, Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiff Barbara Dennis will take the oral deposition of Hkun D. Tun, M.D., on Wednesday,

July 19, 2017 at 2:00 p.m., at the offices of Mary M. Cherry, Assistant United States Attorney,

1100 Commerce Street, Third Floor, Dallas, Texas  75242.

Furthermore, Defendant is required to bring with him/her to the deposition the items listed in Exhibit A.

The deposition may continue from day to day until completed.

The   deposition   will   be   recorded   stenographically,   and   may   be   recorded   on

videotape/digital recording. The stenographic recording will be conducted by Elite Deposition

Technologies, or its designated certified court reporter and/or videographer.

The deposition will be recorded stenographically, and may be recorded on videotape/digital recording. The stenographic recording will be conducted by Elite Deposition Technologies, or its designated certified court reporter and/or videographer.

Respectfully submitted,

**D. BRADLEY KIZZIA**
State Bar No. 11547550
brad@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the ___ day of June, 2017, in accordance with the Federal Rules of Civil Procedure.

**D. BRADLEY KIZZIA**

# EXHIBIT A

## I.

## DEFINITIONS

1. "**Communication**" means any transmission or exchange of information either orally or in writing, and includes without limitation, any conversation, letter, note, memorandum, intra-firm or intra-office correspondence, telephone calls, telegraphs, telexes, telecopies, facsimile transmissions, cables, conferences, tape recordings, discussions or face-to-face communications. Notwithstanding the foregoing, nothing in this definition of "Communication" shall be construed to include privileged communications between Defendant and his legal counsel.

2. "**Communications Records**" means Documents (as defined herein) reflecting the existence or the contents of a communication, including, without limitation: (i) correspondence received; (ii) copies of correspondence sent; (iii) notes, recordings, file memoranda, or other documents reflecting the existence or contents of any conversation or other communication; (iv) telephone call slips, telephone logs, telecopy logs, telecopy cover sheets, long distance charge sheets, telex charge records, telephone bills, or any other document reflecting the existence or contents of telephone conversations or electrical communications; and (v) work flow logs, calendars, diaries, filing logs, tickler cards, or other records reflecting communications received, sent, or requiring action.

3. "**Defendant**", "**Dallas VA Medical Center**", "**you**", or "**your**" shall mean Defendant Dallas County Hospital District d/b/a Dallas VA Medical Center Health & Hospital System, and includes any person acting or purporting to act on its behalf or under its control, including, but not limited to, all agents, employees, officers, directors., and witnesses.

4. "**Document**" as used herein shall have broad meanings, and shall include without

limitation, any and all manner of written, typed, printed, reproduced, filmed or recorded material, electronic messages, digital, analog or microwave impulses or signals, telecopies, telexes, data compilations, computer output and all sound recordings, photographs, pictures, plans, drawings or other representations of any kind pertaining, describing, referring or relating directly or indirectly, in whole or in part, to the subject matter of each paragraph of each Request, and from which information can be obtained. The term also includes any form of written communications records whether sent or received and all non-identical copies of originals. A draft of a non-identical copy is a separate Document within the meaning of this term.

The term also includes communications not only in words, but in symbols, pictures, sound recordings, film, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems. The **term expressly includes any and all electronic data in any form, including e-mails, text messages and metadata**. If the information is kept in a computer or informational storage or retrievable system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

Further, the term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate by-laws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memoranda recording telephone or in-person conferences, manuals, books, press releases, purchase orders, records, schedules, memos of interviews, evaluations, written reports of tests or experiments, public relations releases, telegraphs, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

Notwithstanding the foregoing, nothing in this definition of "Document" shall be construed to include privileged communications between Defendant and his legal counsel or documents constituting attorney work product.

5. "**Identify**," a direction to "**identify**," or any form of the word "**identify**":

(a) When used in reference to a Document (as defined herein), means to state its date, its author, the type of document (e.g. letter, memorandum, telegram, telex, chart, photograph, sound reproduction, etc.), any identifying numbers affixed to it, or if this information is not available, some other means of identifying it, and its present location and the name of each of its present custodians.

(b) When used in reference to a natural person, means to state his or her full name, present or last known residence or business address and telephone number.

(c) When used in reference to an entity, means to state the type of entity and the address of its principal place of business.

(d) When used in reference to a Communication (as defined herein), means to state the date of the communication, the type of the communication (i.e., telephone conversation, meeting, or other oral utterances), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, the identity of each person present when it was made and the subject matter discussed.

6. "**Person**" means any individual, firm, partnership, joint venture, association, corporation, or any other type of entity.

7. "**Plaintiff**", "**James Carter**", or "**Carter**" shall refer to Plaintiff James Carter.

8. "**Relates to**" means, in whole or in part, constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to the object or item at issue.

## II.
## REQUESTS

REQUEST 1:  Please produce true, correct, and legible copies of all documents concerning any communication by you or your representatives and Plaintiff in this case in any way concerning Plaintiff and/or James Carter or the acts or omissions that serve as the basis of this lawsuit (other than your attorneys in this lawsuit).

REQUEST 2: Please produce true, correct, and legible copies of all documents, communications, and other tangible items concerning Plaintiff and/or James Carter that were created or received before this suit with filed.

REQUEST 3: Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between Plaintiff and the Defendant.

REQUEST 4: Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between James Carter and the Defendant.

REQUEST 5: Please produce true, correct, and legible copies of any other lawsuits, demands, and/or claims filed against the Dallas VA Medical Center in the last ten (10) years, which contain allegations substantially similar to those allegations made basis of this lawsuit.

REQUEST 6: Please produce true, correct, and legible copies of all statements, representations, or admissions made by Plaintiff discussing or regarding this lawsuit, any Defendant, or any claims or defenses made by or on behalf of any party.

REQUEST 7: Please produce true, correct, and legible copies of all documents referred to or relied upon by you in preparing the answers to Interrogatory Nos. 3-5 of Plaintiff's First Set of Interrogatories to Defendant United States of America, which were served upon you along with these First Requests for Production.

REQUEST 8: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 when a patient is dropped and/or falls while under its care and supervision.

REQUEST 9: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA

APP. 070

Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient has the proper food and nutrition while under its care and supervision.

REQUEST 10: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient is receiving the proper prescribed medications and amounts for same for medical conditions and illnesses while under its care and supervision.

REQUEST 11: Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at Dallas VA Medical Center from November 11, 2014 to present.

REQUEST 12: Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

REQUEST 13: Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

REQUEST 14: Please produce true, correct, and legible copies of all contracts, agreements, records, and/or documents that reflect Dallas VA's business and/or other relationship with the VA Community Living Center.

REQUEST 15: Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Medical Center from November 11, 2014 to present.

REQUEST 16: Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that evidence your claim that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that Plaintiff or Carter failed to mitigate same," as stated in Defendant United States of America's Original Answer.

REQUEST 17: Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that You contend substantiate and support the assertion that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that another actor's or actors' negligence was an intervening or superseding cause of the alleged injuries," as stated in Defendant United States of America's Original Answer.

REQUEST 18: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 1.

REQUEST 19: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 2.

REQUEST 20: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 6.

REQUEST 21: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 7.

REQUEST 22: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 8.

REQUEST 23: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 9.

REQUEST 24: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 10.

REQUEST 25: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 11.

REQUEST 26: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 12.

REQUEST 27: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 13.

REQUEST 28: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 14.

REQUEST 29: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 15.

REQUEST 30: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 16.

REQUEST 31: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 17.

REQUEST 32: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 20.

REQUEST 33:  Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(a) "Medical Records of James Carter."

REQUEST 34:  Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(b) "Administrative claim file."

REQUEST 35:  Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(c) "Policies and procedures applicable to the claims at issue."

REQUEST 36:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Mildred Padilla, PT.

REQUEST 37:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Betsy Lucena, OTR.

REQUEST 38:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ansey John, RN.

REQUEST 39:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lee Ann Jones, RN

REQUEST 40:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jaicus Solis, MD.

REQUEST 41:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Candice Shewmake, RN.

REQUEST 42:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lakshmi Sakthivelnathan, MD.

REQUEST 43:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Josh Williams, RN.

REQUEST 44:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Melanie Rue, PA.

REQUEST 45:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Anca Rohner, PA-C.

REQUEST 46:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ali Pitafi, MD.

REQUEST 47:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Batool Imtiaz, MD.

REQUEST 48:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Shemsu Balker, MD.

REQUEST 49:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ishak A. Mansi, MD.

REQUEST 50:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jennifer James, MD.

REQUEST 51:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Zeeshan Ramzan, MD.

REQUEST 52:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Henry Ntende, MD.

REQUEST 53:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Susan Hedayati, MD.

REQUEST 54:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jonathan Dowell, MD.

REQUEST 55:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Hkun Tun, MD.

REQUEST 56:  Please produce true, correct, and legible copies of any reports, reviews, or evaluations of the care provided by Defendant to James Carter, where such record or document was prepared before this suit was filed.

REQUEST 57:  Please produce true, correct, and legible copies of any criticism, poor evaluation, disciplinary action, and/or other negative review of any of the medical providers involved in the care of James Cater, where such records of document were prepared before this suit was filed.

REQUEST 58:  Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter received proper nutrition during the last thirty (30) days that he was under Defendant's medical care.

REQUEST 59:  Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter's nutritional needs during the last thirty (30) days of his life was being directed or supervised by a qualified dietician.

REQUEST 60:  True, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to preventing wounds from being infected.

REQUEST 61:  True, correct, and legible copies of all contracts or agreements that pertained to your work and services for the Dallas VA Medical Center and/or VA Community Living Center from November 1, 2014 to December 31, 2015.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BARBARA DENNIS on behalf of the Estate of JAMES CARTER** | § § § | |
| **Plaintiff,** | § § | |
| | § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **VS.** | § § | |
| **UNITED STATES OF AMERICA,** | § § | |
| **Defendant.** | § § | |

## PLAINTIFF'S NOTICE OF DEPOSITION OF WILLIAM CHINN
## WITH SUBPOENA DUCES TECUM

TO:     Defendant United States of America, by and through its attorney of record, Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiff Barbara Dennis will take the oral deposition of William Chinn, on Wednesday, July 19,

2017 at 1:00 p.m., at the offices of Mary M. Cherry, Assistant United States Attorney, 1100

Commerce Street, Third Floor, Dallas, Texas  75242.

Furthermore, the witness is required to bring with him/her to the deposition the items listed in Exhibit A.

The deposition may continue from day to day until completed.

The deposition will be recorded stenographically, and may be recorded on videotape/digital recording. The stenographic recording will be conducted by Elite Deposition Technologies, or its designated certified court reporter and/or videographer.

Respectfully submitted,

**D. BRADLEY KIZZIA**
State Bar No. 11547550
brad@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the _16th_ day of June, 2017, in accordance with the Federal Rules of Civil Procedure.

**D. BRADLEY KIZZIA**

# EXHIBIT A

## I.

## DEFINITIONS

1. "**Communication**" means any transmission or exchange of information either orally or in writing, and includes without limitation, any conversation, letter, note, memorandum, intra-firm or intra-office correspondence, telephone calls, telegraphs, telexes, telecopies, facsimile transmissions, cables, conferences, tape recordings, discussions or face-to-face communications. Notwithstanding the foregoing, nothing in this definition of "Communication" shall be construed to include privileged communications between Defendant and his legal counsel.

2. "**Communications Records**" means Documents (as defined herein) reflecting the existence or the contents of a communication, including, without limitation: (i) correspondence received; (ii) copies of correspondence sent; (iii) notes, recordings, file memoranda, or other documents reflecting the existence or contents of any conversation or other communication; (iv) telephone call slips, telephone logs, telecopy logs, telecopy cover sheets, long distance charge sheets, telex charge records, telephone bills, or any other document reflecting the existence or contents of telephone conversations or electrical communications; and (v) work flow logs, calendars, diaries, filing logs, tickler cards, or other records reflecting communications received, sent, or requiring action.

3. "**Defendant**", "**Dallas VA Medical Center**", "**you**", or "**your**" shall mean Defendant Dallas County Hospital District d/b/a Dallas VA Medical Center Health & Hospital System, and includes any person acting or purporting to act on its behalf or under its control, including, but not limited to, all agents, employees, officers, directors, and witnesses.

4. "**Document**" as used herein shall have broad meanings, and shall include without

limitation, any and all manner of written, typed, printed, reproduced, filmed or recorded material, electronic messages, digital, analog or microwave impulses or signals, telecopies, telexes, data compilations, computer output and all sound recordings, photographs, pictures, plans, drawings or other representations of any kind pertaining, describing, referring or relating directly or indirectly, in whole or in part, to the subject matter of each paragraph of each Request, and from which information can be obtained. The term also includes any form of written communications records whether sent or received and all non-identical copies of originals. A draft of a non-identical copy is a separate Document within the meaning of this term.

The term also includes communications not only in words, but in symbols, pictures, sound recordings, film, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems. The **term expressly includes any and all electronic data in any form, including e-mails, text messages and metadata**. If the information is kept in a computer or informational storage or retrievable system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

Further, the term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate by-laws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memoranda recording telephone or in-person conferences, manuals, books, press releases, purchase orders, records, schedules, memos of interviews, evaluations, written reports of tests or experiments, public relations releases, telegraphs, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

Notwithstanding the foregoing, nothing in this definition of "Document" shall be construed to include privileged communications between Defendant and his legal counsel or documents constituting attorney work product.

5.  "**Identify**," a direction to "**identify,**" or any form of the word "**identify**":

(a) When used in reference to a Document (as defined herein), means to state its date, its author, the type of document (e.g. letter, memorandum, telegram, telex, chart, photograph, sound reproduction, etc.), any identifying numbers affixed to it, or if this information is not available, some other means of identifying it, and its present location and the name of each of its present custodians.

(b) When used in reference to a natural person, means to state his or her full name, present or last known residence or business address and telephone number.

(c) When used in reference to an entity, means to state the type of entity and the address of its principal place of business.

(d) When used in reference to a Communication (as defined herein), means to state the date of the communication, the type of the communication (i.e., telephone conversation, meeting, or other oral utterances), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, the identity of each person present when it was made and the subject matter discussed.

6. "**Person**" means any individual, firm, partnership, joint venture, association, corporation, or any other type of entity.

7. "**Plaintiff**", "**James Carter**", or "**Carter**" shall refer to Plaintiff James Carter.

8. "**Relates to**" means, in whole or in part, constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to the object or item at issue.

## II.
## REQUESTS

REQUEST 1:  Please produce true, correct, and legible copies of all documents concerning any communication by you or your representatives and Plaintiff in this case in any way concerning Plaintiff and/or James Carter or the acts or omissions that serve as the basis of this lawsuit (other than your attorneys in this lawsuit).

REQUEST 2: Please produce true, correct, and legible copies of all documents, communications, and other tangible items concerning Plaintiff and/or James Carter that were created or received before this suit with filed.

REQUEST 3: Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between Plaintiff and the Defendant.

REQUEST 4: Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between James Carter and the Defendant.

REQUEST 5: Please produce true, correct, and legible copies of any other lawsuits, demands, and/or claims filed against the Dallas VA Medical Center in the last ten (10) years, which contain allegations substantially similar to those allegations made basis of this lawsuit.

REQUEST 6: Please produce true, correct, and legible copies of all statements, representations, or admissions made by Plaintiff discussing or regarding this lawsuit, any Defendant, or any claims or defenses made by or on behalf of any party.

REQUEST 7: Please produce true, correct, and legible copies of all documents referred to or relied upon by you in preparing the answers to Interrogatory Nos. 3-5 of Plaintiff's First Set of Interrogatories to Defendant United States of America, which were served upon you along with these First Requests for Production.

REQUEST 8: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 when a patient is dropped and/or falls while under its care and supervision.

REQUEST 9: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA

Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient has the proper food and nutrition while under its care and supervision.

REQUEST 10: Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient is receiving the proper prescribed medications and amounts for same for medical conditions and illnesses while under its care and supervision.

REQUEST 11: Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at Dallas VA Medical Center from November 11, 2014 to present.

REQUEST 12: Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

REQUEST 13: Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

REQUEST 14: Please produce true, correct, and legible copies of all contracts, agreements, records, and/or documents that reflect Dallas VA's business and/or other relationship with the VA Community Living Center.

REQUEST 15: Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Medical Center from November 11, 2014 to present.

REQUEST 16: Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that evidence your claim that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that Plaintiff or Carter failed to mitigate same," as stated in Defendant United States of America's Original Answer.

REQUEST 17: Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that You contend substantiate and support the assertion that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that another actor's or actors' negligence was an intervening or superseding cause of the alleged injuries," as stated in Defendant United States of America's Original Answer.

REQUEST 18: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 1.

REQUEST 19: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 2.

REQUEST 20: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 6.

REQUEST 21: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 7.

REQUEST 22: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 8.

REQUEST 23: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 9.

REQUEST 24: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 10.

REQUEST 25: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 11.

REQUEST 26: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 12.

REQUEST 27: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 13.

REQUEST 28: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 14.

REQUEST 29: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 15.

REQUEST 30: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 16.

REQUEST 31: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 17.

REQUEST 32: Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 20.

REQUEST 33:  Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(a) "Medical Records of James Carter."

REQUEST 34: Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(b) "Administrative claim file."

REQUEST 35: Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(c) "Policies and procedures applicable to the claims at issue."

REQUEST 36: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Mildred Padilla, PT.

REQUEST 37: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Betsy Lucena, OTR.

REQUEST 38: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ansey John, RN.

REQUEST 39: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lee Ann Jones, RN

REQUEST 40: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jaicus Solis, MD.

REQUEST 41: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Candice Shewmake, RN.

REQUEST 42: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lakshmi Sakthivelnathan, MD.

REQUEST 43: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Josh Williams, RN.

REQUEST 44: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Melanie Rue, PA.

REQUEST 45: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Anca Rohner, PA-C.

REQUEST 46: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ali Pitafi, MD.

REQUEST 47: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Batool Imtiaz, MD.

REQUEST 48: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Shemsu Balker, MD.

REQUEST 49: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ishak A. Mansi, MD.

REQUEST 50: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jennifer James, MD.

REQUEST 51: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Zeeshan Ramzan, MD.

REQUEST 52: Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Henry Ntende, MD.

REQUEST 53:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Susan Hedayati, MD.

REQUEST 54:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jonathan Dowell, MD.

REQUEST 55:  Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Hkun Tun, MD.

REQUEST 56:  Please produce true, correct, and legible copies of any reports, reviews, or evaluations of the care provided by Defendant to James Carter, where such record or document was prepared before this suit was filed.

REQUEST 57:  Please produce true, correct, and legible copies of any criticism, poor evaluation, disciplinary action, and/or other negative review of any of the medical providers involved in the care of James Cater, where such records of document were prepared before this suit was filed.

REQUEST 58:  Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter received proper nutrition during the last thirty (30) days that he was under Defendant's medical care.

REQUEST 59:  Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter's nutritional needs during the last thirty (30) days of his life was being directed or supervised by a qualified dietician.

REQUEST 60:  True, correct, and legible copies of all policies, practices, procedures, and/or protocol that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to preventing wounds from becoming infected.

REQUEST 61:  True, correct, and legible copies of all contracts or agreement that pertained to your work and services for the Dallas VA Medical Center and/or VA Community Living Center and/o related to treatment of patients there from November 1, 2014 to December 31, 2015.

# EXHIBIT I

-----Original Message-----
From: Cherry, Mary (USATXN) [mailto:Mary.Cherry@usdoj.gov]
Sent: Wednesday, June 21, 2017 11:50 AM
To: Brad Kizzia <bkizzia@kjpllc.com>

1

Subject: RE: Dennis/Carter vs V.A.

Brad,

I am able to confirm that all three witnesses are available for deposition on July 19 as requested in the notice of deposition:   Mr. Chinn at 1:00 p.m.; Dr. Tun at 2:00 p.m.; and corporate representative David Hales at 3:00 p.m.

I am not certain I understand your email response with regard to the issues I raised.  I am seeking clarification of your deposition notices so that we can resolve any potential issues or disagreements and not have any last minute confusion about the nature of the depositions.  Therefore, I would like to reiterate my understanding of your request and Defendant's position.

I understand that you are noticing the three depositions on July 19 at 1pm, 2pm and 3pm, and that you will complete Mr. Chinn's, Dr. Tun's, and David Hale's depositions on July 19 before the close of business - or no later than 6 p.m. Defendant will not agree to continue the deposition of any of the witnesses beyond 6pm or to another date, including July 20, if you are unable to complete the depositions by 6:00 p.m. on July 19.  The federal rules do not require witnesses or parties to take two days out of their schedules to continue a deposition.

Second, Defendant understands that you are deposing the witnesses by stenographic means because you have not specified that the deposition will, in fact, be taken by video.  Pursuant to Federal Rule of Civil Procedure 30(b)(1) and 30(b)(3), please send a revised notice of deposition, that specifies a video deposition, within a reasonable time before the deposition, if that is your intent.

I am seeking these clarifications in order to avoid potential disputes at the deposition itself, and avoid any unnecessary waste of time and expense with regard to these depositions.  Thank you for your understanding.


Marti Cherry
Assistant United States Attorney
1100 Commerce Street
Third Floor
Dallas, TX  75242
Direct:  214-659-8834
Email:  mary.cherry@usdoj.gov

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BARBARA DENNIS on behalf of the Estate of** | § | |
| **JAMES CARTER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **VS.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S SECOND NOTICE OF DEPOSITION OF DEFENDANT DALLAS VA MEDICAL CENTER'S CORPORATE REPRESENTATIVE WITH SUBPOENA DUCES TECUM

TO:     Defendant United States of America, by and through its attorney of record, Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiff Barbara Dennis will take the oral deposition of Defendant Dallas VA Medical Center

("Defendant" and/or "Dallas VA"), on Wednesday, August 30, 2017 at 1:30 p.m., at the offices

of Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor,

Dallas, Texas 75242.

Defendant Dallas VA Medical Center is directed to designate a person or persons to

testify on its behalf on the following matters:

1.     The Defendant's amended answer and including the denials and affirmative defenses stated therein;
2.     Defendant's discovery responses, including its interrogatory answers and document production;
3.     The leg injury suffered by Mr. Carter while under the care of the Dallas VA Medical Center including its cause and treatment;

4.    The malnutrition that was a factor in Mr. Carter's death at the Dallas VA Medical Center, including its cause and treatment; and

5.    The records and documents requested in Exhibit A to this Notice.

Furthermore, Defendant is required to bring with him/her to the deposition the items listed in Exhibit A.

The deposition may continue from day to day until completed.

The deposition will be recorded stenographically, and may be recorded on videotape/digital recording. The stenographic recording will be conducted by Elite Deposition Technologies, or its designated certified court reporter and/or videographer.

Respectfully submitted,

**D. BRADLEY KIZZIA**
State Bar No. 11547550
brad@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the 21st day of August, 2017, in accordance with the Federal Rules of Civil Procedure.

**D. BRADLEY KIZZIA**

# EXHIBIT A

## I.

## DEFINITIONS

1. "**Communication**" means any transmission or exchange of information either orally or in writing, and includes without limitation, any conversation, letter, note, memorandum, intra-firm or intra-office correspondence, telephone calls, telegraphs, telexes, telecopies, facsimile transmissions, cables, conferences, tape recordings, discussions or face-to-face communications. Notwithstanding the foregoing, nothing in this definition of "Communication" shall be construed to include privileged communications between Defendant and his legal counsel.

2. "**Communications Records**" means Documents (as defined herein) reflecting the existence or the contents of a communication, including, without limitation: (i) correspondence received; (ii) copies of correspondence sent; (iii) notes, recordings, file memoranda, or other documents reflecting the existence or contents of any conversation or other communication; (iv) telephone call slips, telephone logs, telecopy logs, telecopy cover sheets, long distance charge sheets, telex charge records, telephone bills, or any other document reflecting the existence or contents of telephone conversations or electrical communications; and (v) work flow logs, calendars, diaries, filing logs, tickler cards, or other records reflecting communications received, sent, or requiring action.

3. "**Defendant**", "**Dallas VA Medical Center**", "**you**", or "**your**" shall mean Defendant Dallas County Hospital District d/b/a Dallas VA Medical Center Health & Hospital System, and includes any person acting or purporting to act on its behalf or under its control, including, but not limited to, all agents, employees, officers, and directors.

4. "**Document**" as used herein shall have broad meanings, and shall include without

limitation, any and all manner of written, typed, printed, reproduced, filmed or recorded material, electronic messages, digital, analog or microwave impulses or signals, telecopies, telexes, data compilations, computer output and all sound recordings, photographs, pictures, plans, drawings or other representations of any kind pertaining, describing, referring or relating directly or indirectly, in whole or in part, to the subject matter of each paragraph of each Request, and from which information can be obtained. The term also includes any form of written communications records whether sent or received and all non-identical copies of originals. A draft of a non-identical copy is a separate Document within the meaning of this term.

The term also includes communications not only in words, but in symbols, pictures, sound recordings, film, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems. The **term expressly includes any and all electronic data in any form, including e-mails, text messages and metadata**. If the information is kept in a computer or informational storage or retrievable system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

Further, the term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate by-laws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memoranda recording telephone or in-person conferences, manuals, books, press releases, purchase orders, records, schedules, memos of interviews, evaluations, written reports of tests or experiments, public relations releases, telegraphs, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

Notwithstanding the foregoing, nothing in this definition of "Document" shall be construed to include privileged communications between Defendant and his legal counsel or documents constituting attorney work product.

5. "**Identify**," a direction to "**identify,**" or any form of the word "**identify**":

(a) When used in reference to a Document (as defined herein), means to state its date, its author, the type of document (e.g. letter, memorandum, telegram, telex, chart, photograph, sound reproduction, etc.), any identifying numbers affixed to it, or if this information is not available, some other means of identifying it, and its present location and the name of each of its present custodians.

(b) When used in reference to a natural person, means to state his or her full name, present or last known residence or business address and telephone number.

(c) When used in reference to an entity, means to state the type of entity and the address of its principal place of business.

(d) When used in reference to a Communication (as defined herein), means to state the date of the communication, the type of the communication (i.e., telephone conversation, meeting, or other oral utterances), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, the identity of each person present when it was made and the subject matter discussed.

6. "**Person**" means any individual, firm, partnership, joint venture, association, corporation, or any other type of entity.

7. **"Plaintiff", "James Carter", or "Carter"** shall refer to Plaintiff James Carter.

8. "**Relates to**" means, in whole or in part, constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to the object or item at issue.

## II.
## REQUESTS

**REQUEST 1:** Please produce true, correct, and legible copies of all documents concerning any communication by you or your representatives and Plaintiff in this case in any way concerning Plaintiff and/or James Carter or the acts or omissions that serve as the basis of this lawsuit (other than your attorneys in this lawsuit).

**REQUEST 2:** Please produce true, correct, and legible copies of all documents, communications, and other tangible items concerning Plaintiff and/or James Carter that were created or received before this suit with filed.

**REQUEST 3:** Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between Plaintiff and the Defendant.

**REQUEST 4:** Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between James Carter and the Defendant.

**REQUEST 5:** Please produce true, correct, and legible copies of any other lawsuits, demands, and/or claims filed against the Dallas VA Medical Center in the last ten (10) years, which contain allegations substantially similar to those allegations made basis of this lawsuit.

**REQUEST 6:** Please produce true, correct, and legible copies of all statements, representations, or admissions made by Plaintiff discussing or regarding this lawsuit, any Defendant, or any claims or defenses made by or on behalf of any party.

**REQUEST 7:** Please produce true, correct, and legible copies of all documents referred to or relied upon by you in preparing the answers to Interrogatory Nos. 3-5 of Plaintiff's First Set of Interrogatories to Defendant United States of America, which were served upon you along with these First Requests for Production.

**REQUEST 8:** Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 when a patient is dropped and/or falls while under its care and supervision.

**REQUEST 9:** Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA

Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient has the proper food and nutrition while under its care and supervision.

**REQUEST 10:** Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient is receiving the proper prescribed medications and amounts for same for medical conditions and illnesses while under its care and supervision.

**REQUEST 11:** Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at Dallas VA Medical Center from November 11, 2014 to present.

**REQUEST 12:** Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

**REQUEST 13:** Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

**REQUEST 14:** Please produce true, correct, and legible copies of all contracts, agreements, records, and/or documents that reflect Dallas VA's business and/or other relationship with the VA Community Living Center.

**REQUEST 15:** Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Medical Center from November 11, 2014 to present.

**REQUEST 16:** Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that evidence your claim that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that Plaintiff or Carter failed to mitigate same," as stated in Defendant United States of America's Original Answer.

**REQUEST 17:** Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that You contend substantiate and support the assertion that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that another actor's or actors' negligence was an intervening or superseding cause of the alleged injuries," as stated in Defendant United States of America's Original Answer.

**REQUEST 18:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 1.

**REQUEST 19:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 2.

**REQUEST 20:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 6.

**REQUEST 21:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 7.

**REQUEST 22:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 8.

**REQUEST 23:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 9.

**REQUEST 24:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 10.

**REQUEST 25:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 11.

**REQUEST 26:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 12.

**REQUEST 27:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 13.

**REQUEST 28:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 14.

**REQUEST 29:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 15.

**REQUEST 30:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 16.

**REQUEST 31:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 17.

**REQUEST 32:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 20.

**REQUEST 33:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(a) "Medical Records of James Carter."

**REQUEST 34:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(b) "Administrative claim file."

**REQUEST 35:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(c) "Policies and procedures applicable to the claims at issue."

**REQUEST 36:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Mildred Padilla, PT.

**REQUEST 37:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Betsy Lucena, OTR.

**REQUEST 38:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ansey John, RN.

**REQUEST 39:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lee Ann Jones, RN

**REQUEST 40:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jaicus Solis, MD.

**REQUEST 41:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Candice Shewmake, RN.

**REQUEST 42:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lakshmi Sakthivelnathan, MD.

**REQUEST 43:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Josh Williams, RN.

**REQUEST 44:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Melanie Rue, PA.

**REQUEST 45:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Anca Rohner, PA-C.

**REQUEST 46:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ali Pitafi, MD.

**REQUEST 47:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Batool Imtiaz, MD.

**REQUEST 48:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Shemsu Balker, MD.

**REQUEST 49:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ishak A. Mansi, MD.

**REQUEST 50:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jennifer James, MD.

**REQUEST 51:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Zeeshan Ramzan, MD.

**REQUEST 52:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Henry Ntende, MD.

**REQUEST 53:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Susan Hedayati, MD.

**REQUEST 54:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jonathan Dowell, MD.

**REQUEST 55:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Hkun Tun, MD.

**REQUEST 56:** Please produce true, correct, and legible copies of any reports, reviews, or evaluations of the care provided by Defendant to James Carter, where such record or document was prepared before this suit was filed.

**REQUEST 57:** Please produce true, correct, and legible copies of any criticism, poor evaluation, disciplinary action, and/or other negative review of any of the medical providers involved in the care of James Cater, where such records of document were prepared before this suit was filed.

**REQUEST 58:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter received proper nutrition during the last thirty (30) days that he was under Defendant's medical care.

**REQUEST 59:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter's nutritional needs during the last thirty (30) days of his life was being directed or supervised by a qualified dietician.

**REQUEST 60:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show what caused Mr. Carter's leg wound while under the care of the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.

**REQUEST 61:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show why Mr. Carter's leg wound worsened while under the care of the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.

**REQUEST 62:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show when and why the wound vac used on Mr. Carter stopped operating and who at the Dallas VA Medical Center was responsible for same.

**REQUEST 63:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show why Mr. Carter suffered from malnutrition last thirty (30) days of his life at the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BARBARA DENNIS on behalf of the Estate of** | § | |
| **JAMES CARTER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **VS.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF'S AMENDED SECOND NOTICE OF DEPOSITION OF DEFENDANT DALLAS VA MEDICAL CENTER'S CORPORATE REPRESENTATIVE WITH SUBPOENA DUCES TECUM

TO:   Defendant United States of America, by and through its attorney of record, Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiff Barbara Dennis will take the oral deposition of Defendant Dallas VA Medical Center

("Defendant" and/or "Dallas VA"), on Friday, September 8, 2017 at 1:30 p.m., at the offices of

Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas,

Texas 75242.

Defendant Dallas VA Medical Center is directed to designate a person or persons to

testify on its behalf on the following matters:

1.   The facts upon which  Defendant bases denials and affirmative defenses stated in its amended answer;
2.   The facts upon with Defendant bases its discovery responses, including its interrogatory answers and document production;
3.   The facts related to the leg injury suffered by Mr. Carter while under the care of the Dallas VA Medical Center including its cause and treatment;
4.   The facts related to the malnutrition that was a factor in Mr. Carter's death at the Dallas VA Medical Center, including its cause and treatment; and

5.      The records and documents requested in Exhibit A to this Notice.

Furthermore, Defendant is required to bring with him/her to the deposition the items listed in Exhibit A, but only to the extent any such items have not already been produced by Defendant.

The deposition may continue from day to day until completed.

The deposition will be recorded stenographically, and may be recorded on videotape/digital recording. The stenographic recording will be conducted by Elite Deposition Technologies, or its designated certified court reporter and/or videographer.

Respectfully submitted,

**D. BRADLEY KIZZIA**
State Bar No. 11547550
brad@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the ___ day of August, 2017, in accordance with the Federal Rules of Civil Procedure.

**D. BRADLEY KIZZIA**

# EXHIBIT A

I.

## DEFINITIONS

1. "**Communication**" means any transmission or exchange of information either orally or in writing, and includes without limitation, any conversation, letter, note, memorandum, intra-firm or intra-office correspondence, telephone calls, telegraphs, telexes, telecopies, facsimile transmissions, cables, conferences, tape recordings, discussions or face-to-face communications. Notwithstanding the foregoing, nothing in this definition of "Communication" shall be construed to include privileged communications between Defendant and his legal counsel.

2. "**Communications Records**" means Documents (as defined herein) reflecting the existence or the contents of a communication, including, without limitation: (i) correspondence received; (ii) copies of correspondence sent; (iii) notes, recordings, file memoranda, or other documents reflecting the existence or contents of any conversation or other communication; (iv) telephone call slips, telephone logs, telecopy logs, telecopy cover sheets, long distance charge sheets, telex charge records, telephone bills, or any other document reflecting the existence or contents of telephone conversations or electrical communications; and (v) work flow logs, calendars, diaries, filing logs, tickler cards, or other records reflecting communications received, sent, or requiring action.

3. "**Defendant**", "**Dallas VA Medical Center**", "**you**", or "**your**" shall mean Defendant Dallas County Hospital District d/b/a Dallas VA Medical Center Health & Hospital System, and includes any person acting or purporting to act on its behalf or under its control, including, but not limited to, all agents, employees, officers, and directors.

4. "**Document**" as used herein shall have broad meanings, and shall include without limitation, any and all manner of written, typed, printed, reproduced, filmed or recorded material, electronic messages, digital, analog or microwave impulses or signals, telecopies, telexes, data

compilations, computer output and all sound recordings, photographs, pictures, plans, drawings or other representations of any kind pertaining, describing, referring or relating directly or indirectly, in whole or in part, to the subject matter of each paragraph of each Request, and from which information can be obtained. The term also includes any form of written communications records whether sent or received and all non-identical copies of originals. A draft of a non-identical copy is a separate Document within the meaning of this term.

The term also includes communications not only in words, but in symbols, pictures, sound recordings, film, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems. The **term expressly includes any and all electronic data in any form, including e-mails, text messages and metadata**. If the information is kept in a computer or informational storage or retrievable system, the term also includes codes and programming instructions and other materials necessary to understand such systems.

Further, the term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate by-laws and charters, correspondence, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memoranda recording telephone or in-person conferences, manuals, books, press releases, purchase orders, records, schedules, memos of interviews, evaluations, written reports of tests or experiments, public relations releases, telegraphs, teletypes, work papers, drafts of documents, and all other writings whose contents relate to the subject matter of the discovery request.

Notwithstanding the foregoing, nothing in this definition of "Document" shall be construed to include privileged communications between Defendant and his legal counsel or documents constituting attorney work product.

5. "**Identify**," a direction to "**identify,**" or any form of the word "**identify**":

(a) When used in reference to a <u>Document</u> (as defined herein), means to state its date, its author, the type of document (e.g. letter, memorandum, telegram, telex, chart, photograph, sound reproduction, etc.), any identifying numbers affixed to it, or if this information is not available, some other means of identifying it, and its present location and the name of each of its present custodians.

(b) When used in reference to a <u>natural person</u>, means to state his or her full name, present or last known residence or business address and telephone number.

(c) When used in reference to an <u>entity</u>, means to state the type of entity and the address of its principal place of business.

(d) When used in reference to a <u>Communication</u> (as defined herein), means to state the date of the communication, the type of the communication (i.e., telephone conversation, meeting, or other oral utterances), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, the identity of each person present when it was made and the subject matter discussed.

6. "**Person**" means any individual, firm, partnership, joint venture, association, corporation, or any other type of entity.

7. **"Plaintiff", "James Carter", or "Carter"** shall refer to Plaintiff James Carter.

8. "**Relates to**" means, in whole or in part, constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to the object or item at issue.

## II.
## REQUESTS

**REQUEST 1:** Please produce true, correct, and legible copies of all documents concerning any communication by you or your representatives and Plaintiff in this case in any way concerning Plaintiff and/or James Carter or the acts or omissions that serve as the basis of this lawsuit (other than your attorneys in this lawsuit).

**REQUEST 2:** Please produce true, correct, and legible copies of all documents, communications, and other tangible items concerning Plaintiff and/or James Carter that were created or received before this suit with filed.

**REQUEST 3:** Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between Plaintiff and the Defendant.

**REQUEST 4:** Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between James Carter and the Defendant.

**REQUEST 5:** Please produce true, correct, and legible copies of any other lawsuits, demands, and/or claims filed against the Dallas VA Medical Center in the last ten (10) years, which contain allegations substantially similar to those allegations made basis of this lawsuit.

**REQUEST 6:** Please produce true, correct, and legible copies of all statements, representations, or admissions made by Plaintiff discussing or regarding this lawsuit, any Defendant, or any claims or defenses made by or on behalf of any party.

**REQUEST 7:** Please produce true, correct, and legible copies of all documents referred to or relied upon by you in preparing the answers to Interrogatory Nos. 3-5 of Plaintiff's First Set of Interrogatories to Defendant United States of America, which were served upon you along with these First Requests for Production.

**REQUEST 8:** Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 when a patient is dropped and/or falls while under its care and supervision.

**REQUEST 9:** Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient has the proper food and nutrition while under its care and supervision.

**REQUEST 10:** Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient is receiving the proper prescribed medications and amounts for same for medical conditions and illnesses while under its care and supervision.

**REQUEST 11:** Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at Dallas VA Medical Center from November 11, 2014 to present.

**REQUEST 12:** Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

**REQUEST 13:** Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.

**REQUEST 14:** Please produce true, correct, and legible copies of all contracts, agreements, records, and/or documents that reflect Dallas VA's business and/or other relationship with the VA Community Living Center.

**REQUEST 15:** Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Medical Center from November 11, 2014 to present.

**REQUEST 16:** Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that evidence your claim that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that Plaintiff or Carter failed to mitigate same," as stated in Defendant United States of America's Original Answer.

**REQUEST 17:** Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that You contend substantiate and support the assertion that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that another actor's or actors' negligence was an intervening or superseding cause of the alleged injuries," as stated in Defendant United States of America's Original Answer.

**REQUEST 18:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 1.

**REQUEST 19:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 2.

**REQUEST 20:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 6.

**REQUEST 21:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 7.

**REQUEST 22:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 8.

**REQUEST 23:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 9.

**REQUEST 24:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 10.

**REQUEST 25:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 11.

**REQUEST 26:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 12.

**REQUEST 27:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 13.

**REQUEST 28:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 14.

**REQUEST 29:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 15.

**REQUEST 30:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 16.

**REQUEST 31:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 17.

**REQUEST 32:** Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that You contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 20.

**REQUEST 33:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(a) "Medical Records of James Carter."

**REQUEST 34:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(b) "Administrative claim file."

**REQUEST 35:** Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(c) "Policies and procedures applicable to the claims at issue."

**PLAINTIFF'S AMENDED SECOND NOTICE OF DEPOSITION OF CORP REPRESENTATIVE**     P a g e | 9

**REQUEST 36:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Mildred Padilla, PT.

**REQUEST 37:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Betsy Lucena, OTR.

**REQUEST 38:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ansey John, RN.

**REQUEST 39:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lee Ann Jones, RN

**REQUEST 40:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jaicus Solis, MD.

**REQUEST 41:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Candice Shewmake, RN.

**REQUEST 42:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lakshmi Sakthivelnathan, MD.

**REQUEST 43:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Josh Williams, RN.

**REQUEST 44:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Melanie Rue, PA.

**REQUEST 45:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Anca Rohner, PA-C.

**REQUEST 46:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ali Pitafi, MD.

**REQUEST 47:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Batool Imtiaz, MD.

**REQUEST 48:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Shemsu Balker, MD.

**REQUEST 49:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ishak A. Mansi, MD.

**REQUEST 50:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jennifer James, MD.

**REQUEST 51:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Zeeshan Ramzan, MD.

**REQUEST 52:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Henry Ntende, MD.

**REQUEST 53:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Susan Hedayati, MD.

**REQUEST 54:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jonathan Dowell, MD.

**REQUEST 55:** Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Hkun Tun, MD.

**REQUEST 56:** Please produce true, correct, and legible copies of any reports, reviews, or evaluations of the care provided by Defendant to James Carter, where such record or document was prepared before this suit was filed.

**REQUEST 57:** Please produce true, correct, and legible copies of any criticism, poor evaluation, disciplinary action, and/or other negative review of any of the medical providers involved in the care of James Cater, where such records of document were prepared before this suit was filed.

**REQUEST 58:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter received proper nutrition during the last thirty (30) days that he was under Defendant's medical care.

**REQUEST 59:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter's nutritional needs during the last thirty (30) days of his life was being directed or supervised by a qualified dietician.

**REQUEST 60:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show what caused Mr. Carter's leg wound while under the care of the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.

**REQUEST 61:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show why Mr. Carter's leg wound worsened while under the care of the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.

**REQUEST 62:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show when and why the wound vac used on Mr. Carter stopped operating and who at the Dallas VA Medical Center was responsible for same.

**REQUEST 63:** Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show why Mr. Carter suffered from malnutrition during the last thirty (30) days of his life at the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.

**REQUEST 64:** Please produce a true, correct and legible copy of any up to date and accurate C.V. and/or resume for the witness.

# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BARBARA DENNIS on behalf of the Estate of JAMES CARTER** | § § § | |
| **Plaintiff,** | § § | |
| **VS.** | § § | **CIVIL ACTION NO. 3:16-cv-3148-G-BN** |
| **UNITED STATES OF AMERICA,** | § § | |
| **Defendant.** | § § | |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
<u>DEFENDANT UNITED STATES OF AMERICA</u>**

To:   Defendant United States of America, by and through its attorney of record, Mary M. Cherry, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

Plaintiff Barbara Dennis on behalf of the Estate of James Carter serves the following First Set of Interrogatories upon Defendant United States of America pursuant to Rule 33 of the Federal Rules of Civil Procedure. These Interrogatories are to be answered separately and fully in writing under oath within thirty (30) days of service.

Respectfully submitted,


*/s/ D. Bradley Kizzia*
**D. BRADLEY KIZZIA**
State Bar No. 11547550
bkizzia@kjpllc.com
**NICHOLAS D. CUSTRED**
State Bar No. 24101664
ncustred@kjpllc.com
**KIZZIA JOHNSON PLLC**
1910 Pacific Ave., Ste. 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165

**ATTORNEYS FOR PLAINTIFF**


**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on the 14th day of March, 2017, in accordance with the Federal Rules of Civil Procedure.

*/s/ D. Bradley Kizzia*
**D. BRADLEY KIZZIA**

# I.
# DEFINITIONS

1.      "**Defendant**," "**USA**," "**you**," and/or "**your**" means and includes United State of America, and includes any person acting or purporting to act on your behalf or under your control.

2.      "**Dallas VA**" means and includes The Dallas VA Medical Center located at 4500 S. Lancaster Rd., Dallas, TX 75216, and includes any person acting or purporting to act on its behalf or under its control.

3.      "**Plaintiff**" means and includes Plaintiff Barbara Dennis on behalf of the Estate of James Carter.

4.      "**James Carter**" means James Ernest Carter, Decedent, that was admitted to the Dallas VA Medical Center on November 11, 2014, until his death on November 25, 2015.

5.      "**Document**" refers to and includes every writing or record of any type and description that is in your possession, control or custody, including without limitation, correspondence, memoranda, interoffice communications, stenographic or hand written notes, drafts, studies, publications, invoices, ledgers, journals, books, records, accounts, pamphlets, voice recordings, reports, surveys, statistical compilations, work papers, data processing cards, computer tapes or printouts, and/or all copies of each which contain any other writing or recordings of any kind which does not appear on the original or on any other copy. To the extent that the information exists within a computer or a computer recorded medium, you are requested to reduce the information to paper copy. "Document" does not include confidential attorney-client communications, attorney work product, or purely consultory expert reports.

6.      "**Identify**" means:

      (a)      with respect to individuals: the name, address and telephone number of the individual;

      (b)      with respect to a corporation or business entity: the name, address and telephone number of the corporation or business entity; and

      (c)      with respect to documents: the type of document, a brief description of the contents of the document, the date of the document, the person to whom the document was sent, and the name, address and telephone number of the present custodian of the document.

8.      "**Lawsuit**" means the case styled Civil Action No. 3:16-cv-3148-G-BN; Barbara Dennis on behalf of the Estate of James Carter v. United States of America; In The United States District Court for the Northern District of Texas, Dallas Division.

# I.
# INTERROGATORIES

**INTERROGATORY NO. 1:**        Do you contend that any of the doctors, nurses, pathologists, x-ray techs, and/or all other medical personnel that treated or cared for James Carter at the Dallas VA were not employees or otherwise under the control of the United States, Department of Veteran Affairs, or some agency thereof? If so, please identify each individual that you contend was not an employee or otherwise under the control of the United States, Department of Veteran Affairs, or some agency thereof.

**ANSWER:**

**INTERROGATORY NO. 2:**        Do you contend that James Carter was properly given all necessary care and supervision by doctors, nurses, pathologists, x-ray techs, and/or all other medical personnel at the Dallas VA from the time of his admittance on November 11, 2014, until his death on November 25, 2015? If not, please explain.

**ANSWER:**

**INTERROGATORY NO. 3:**        What date was James Carter admitted and/or discharged from the VA Community Living Center as indicated in paragraph 8 of Defendant United States of America's Original Answer?

**ANSWER:**

**INTERROGATORY NO. 4:**        Under what condition(s) and/or reason(s) was James Carter moved and/or discharged from the Dallas VA to the VA Community Living Center?

**ANSWER:**

**INTERROGATORY NO. 5:**        Under what condition(s) and/or reason(s) was James Carter moved and/or discharged from the VA Community Living Center to the Dallas VA?

**ANSWER:**

**INTERROGATORY NO. 6:**        What policies, procedures, and or protocol are supposed to be followed by the Dallas VA when a patient is dropped and/or falls under its supervision and care?

**ANSWER:**

**INTERROGATORY NO. 7:**        What policies, procedures, and or protocol are supposed to be followed by the Dallas VA to ensure that its patients have the proper food and nutrition under its supervision and care?

**ANSWER:**

**INTERROGATORY NO. 8:**        What policies, procedures, and or protocol are supposed to be followed by the Dallas VA to ensure that its patients are receiving the proper prescribed medications and amounts for same for medical conditions and illnesses (blood pressure medication in James Carter's case) while under its care and supervision.?

**ANSWER:**

**INTERROGATORY NO. 9:**        What is Defendant's explanation for the finding of malnutrition as a contributing factor to James Carter's death?

**ANSWER:**

**INTERROGATORY NO. 10:**        Who was/were the dietician(s) involved with James Carter's care at the Dallas VA during the thirty (30) days that preceded his death?

**ANSWER:**

**INTERROGATORY NO. 11:**        What is the Defendant's explanation for how and why James Carter was dropped while under Defendant's care on or about February 2, 2015?

**ANSWER:**

**INTERROGATORY NO. 12:**        What is the Defendant's explanation for how and why an "abrasion" due to "mild trauma" developed into a "large hematoma" and infected wound to James Carter's right leg from in February, 2015?

**ANSWER:**

**INTERROGATORY NO. 13:**        Does Defendant acknowledge that one or more of its medical providers involved in the care of James Cater acted below the applicable standard of care and/or failed to act within the applicable standard of care? If so, please identify any conduct below the standard of care and medical provider involved.

**ANSWER:**

**INTERROGATORY NO. 14:**        State the facts upon which Defendant bases its "Second Affirmative Defense" that Plaintiff supposedly failed to exhaust her administrative remedies.

**ANSWER:**

**INTERROGATORY NO. 15:**        Identify the "independent contractors" referred to in Defendant's "Fifth Affirmative Defense."

**ANSWER:**

**INTERROGATORY NO. 16:**      State of the facts upon which Defendant bases its "Ninth Affirmative Defense of "contributory negligence" and "a danger" to which Plaintiff and/or James Carter supposedly "voluntarily exposed themselves."

**ANSWER:**

**INTERROGATORY NO. 17:**      State the facts upon which Defendant bases its "Tenth Affirmative Defense" that supposedly "Plaintiff and/or James Carter's negligence was the proximate case of and contributed to any…injuries or damages sustained."

**ANSWER:**

**INTERROGATORY NO. 18:**      State the facts upon which Defendant bases its "Eleventh Affirmative Defense" that Plaintiff or James Carter supposedly "failed to mitigate" his injuries.

**ANSWER:**

**INTERROGATORY NO. 19:**      State the facts upon which Defendant bases its "Twelfth Affirmative Defense" that "another actor's or actors' negligence was an intervening or superseding cause" of James Carter's injuries.

**ANSWER:**

**INTERROGATORY NO. 20:**      State the facts upon which Defendant bases is "Thirteenth Affirmative Defense" regarding "negligence acts or omissions or contributing negligence of third parties."

**ANSWER:**

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARBARA DENNIS, on behalf of the
ESTATE OF JAMES CARTER,

       Plaintiff,

v.

UNITED STATES OF AMERICA,

       Defendant.

Civil Action No. 3:16-CV-3148-G-BN

### DEFENDANT'S RESPONSE AND OBJECTIONS TO
### PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant United States of America (Defendant) serves its Response and

Objections to Plaintiff's First Request for Production.  The following responses are based

upon Defendant's interpretation of the requests propounded by Plaintiff and upon

information and documents presently available to Defendant after conducting a

reasonable investigation.

### REQUEST FOR PRODUCTION NO. 1

*Please produce true, correct, and legible copies of all documents concerning any communication by you or your representatives and Plaintiff in this case in any way concerning Plaintiff and/or James Carter or the acts or omissions that serve as the basis of this lawsuit (other than your attorneys in this lawsuit).*

### Response to RFP No. 1.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by specific communications between individuals.  To the extent Plaintiff seeks documents related to a specific communication(s), the .pdf documents provided are searchable, or

Defendant's Response and Objections to Plaintiff's First Request for Production – Page 1 of 27

easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 2

*Please produce true, correct, and legible copies of all documents, communications, and other tangible items concerning Plaintiff and/or James Carter that were created or received before this suit with [sic] filed.*

### Response to RFP No. 2.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Defendant objects to and is withholding documents responsive to this Request because it seeks materials subject to the attorney-client privilege, work product privilege, and/or 38 U.S.C. § 5705 and its implementing regulations.  Defendant provides the attached privilege log that identifies documents being withheld on the basis of privilege, Priv 001-133.

Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. The medical records provided are kept in chronological order, not by specific communications between individuals.  To the extent Plaintiff seeks documents related to a specific communication, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

In addition, Defendant attaches the following documents, Dft Resp RFP 1-11:

(i)     All Reports of Contact kept by the Dallas VA Patient Advocate Office, and

(ii)    Two letters, dated May 23, 2016 and June 16, 2016, sent by the VA's Office of General Counsel to Plaintiff during the administrative claim process; and

(iii)   Plaintiff's statement to the VA.

All known, non-privileged information concerning Plaintiff and/or Mr. Carter are contained within the records provided or identified herein.

## REQUEST FOR PRODUCTION NO. 3

*Please produce true, correct, and legible copies of all documents which reflect, refer to, or relate in any way to any written or oral communications between Plaintiff and the Defendant.*

### Response to RFP No. 3.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by specific communications between individuals.  To the extent Plaintiff seeks documents related to a specific communication(s), the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 4

*Please produce true, correct, and legible copies of all documents which reflect, refer to, or related in any way to any written or oral communications between James Carter and the Defendant.*

### Response to RFP No. 4.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by specific communications between individuals.  To the extent Plaintiff seeks documents related to a specific communication(s), the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 5

*Please produce true, correct, and legible copies of any other lawsuits, demands, and/or claims filed against the Dallas VA Medical Center in the last ten (10) years, which contain allegations substantially similar to those allegations made basis of this lawsuit.*

### Response to RFP No. 5.

Defendant objects to this request as vague because it does not explain or identify what types of lawsuits, demands, or claims are "substantially similar" to Plaintiff's

allegations in this lawsuit; nor does the request identify any individuals who were subject to such suit, demand or claim. Defendant further objects that the information requested is not relevant or proportional to the needs of the case because Plaintiff seeks information that does not relate in any way to the care that Defendant's employees provided to Mr. Carter. Defendant also objects that the information regarding third parties and their claims are protected from disclosure under the Federal Privacy Act, 5 U.S.C. § 552a.

## REQUEST FOR PRODUCTION NO. 6

*Please produce true, correct, and legible copies of all statements, representations, or admissions made by Plaintiff discussing or regarding this lawsuit, any Defendant, or any claims or defenses made by or on behalf of any party.*

### Response to RFP No. 6.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by specific communications between individuals. To the extent Plaintiff seeks documents related to a specific communication(s), the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 7

*Please produce true, correct, and legible copies of all documents referred to or relied upon by you in preparing the answers to Interrogatory Nos. 3-5 of Plaintiff's First Set of Interrogatories to Defendant United States of America, which were served upon you along with these First Requests for Production.*

### Response to RFP No. 7.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by specific communications between individuals. To the extent Plaintiff seeks documents related to a specific communication(s), the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 8

*Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 when a patient is dropped and/or falls while under its care and supervision.*

### Response to RFP No. 8.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Defendant refers Plaintiff to the Veterans Health Administration-wide policies, procedures, requirements and other information of general applicability are available at http://www.va.gov/vhapublications/.

Defendant attaches a policy applicable to the Dallas VA Medical Center, Dft Resp RFP 12-38:

- VANTHCS Memorandum No. 118A-12, Patient Fall Prevention Program

## REQUEST FOR PRODUCTION NO. 9

*Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient has the proper food and nutrition while under its care and supervision.*

### Response to RFP No. 9.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Defendant refers Plaintiff to the Veterans Health Administration-wide policies, procedures, requirements and other information of general applicability are available at http://www.va.gov/vhapublications/.

Defendant attaches a policy applicable to the Dallas VA Medical Center, Dft Resp RFP 39-48:

- VANTHCS Memorandum No. 120-04, Policies and Procedures for Nutritional Care of Patients and Outpatient Nutritional Supplements

## REQUEST FOR PRODUCTION NO. 10

*Please produce true, correct, and legible copies of all policies, practices, procedures, and/or protocols that physicians, nurses, staff, and/or employees of the Dallas VA Medical Center were required to follow in 2014 and 2015 relating to ensuring a patient is receiving the proper prescribed medications and amounts for same for medical conditions and illnesses while under its care and supervision.*

### Response to RFP No. 10.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Defendant refers Plaintiff to the Veterans Health Administration-wide policies, procedures, requirements and other information of general applicability are available at http://www.va.gov/vhapublications/.

In addition, Defendant attaches policies applicable to the Dallas VA Medical Center, Dft Resp RFP 49-102:

- VANTHCS Memorandum No. 11CHIO-01, Medication Reconciliation;

- VANTHCS Memorandum No. 118A-14, Bar Code Medication Administration (BCMA);

- VANTHCS Memorandum No. 119-01, Drug Policy and Procedures

- VA NTHCS Memorandum No. 119-07, High Risk, High Alert Medication Management;

- VA NTHCS Memorandum No. 119-13, Sound-Alike/Look-Alike Drugs (SALAD)

## REQUEST FOR PRODUCTION NO. 11

*Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at Dallas VA Medical Center from November 11, 2014 to present.*

### Response to RFP No. 11.

The VA provides no-cost care to (i) Veterans who cannot afford to pay for their care, (ii) Veterans with catastrophic medical conditions, (iii) Veterans with a disability rating of 50 percent or higher, or (iv) Veterans with conditions that are officially rated as "service-connected." Our records show that Mr. Carter completed an "income assessment" (also called a means test) on January 18, 2013 and was determined to be eligible for free VA healthcare services based on his income level. Therefore, VA has no

billing records for Mr. Carter's medical treatment and care at Dallas VA Medical Center and/or VA Community Living Center from November 11, 2014 to November 25, 2015. However, Mr. Carter did not qualify for medication copayment exemption, and attached is a copy of the Patient Payment History Report showing payment that VA received for medication copayment, Dft Resp RFP 178-79.

## REQUEST FOR PRODUCTION NO. 12

*Please produce true, correct, and legible copies of billing records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.*

### Response to RFP No. 12.

The VA provides no-cost care to (i) Veterans who cannot afford to pay for their care, (ii) Veterans with catastrophic medical conditions, (iii) Veterans with a disability rating of 50 percent or higher, or (iv) Veterans with conditions that are officially rated as "service-connected." Our records show that Mr. Carter completed an "income assessment" (also called a means test) on January 18, 2013 and was determined to be eligible for free VA healthcare services based on his income level. Therefore, VA has no billing records for Mr. Carter's medical treatment and care at Dallas VA Medical Center and/or VA Community Living Center from November 11, 2014 to November 25, 2015. However, Mr. Carter did not qualify for medication copayment exemption, and attached is a copy of the Patient Payment History Report showing payment that VA received for medication copayment, Dft Resp RFP 177-79.

## REQUEST FOR PRODUCTION NO. 13

*Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Community Living Center from November 11, 2014 to present.*

### Response to RFP No. 13.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by specific communications between individuals. To the extent Plaintiff seeks documents related to a specific communication(s), the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 14

*Please produce true, correct, and legible copies of all contracts, agreements, records, and/or documents that reflect Dallas VA's business and/or other relationship with the VA Community Living Center.*

### Response to RFP No. 14.

Defendant objects to this request as overly broad and not relevant or proportional to the needs of the case because the Dallas VA has a large number of contracts, agreements, records, and/or documents related to its business with the Community Living Center (CLC), and these contractual agreements are wholly unrelated to the claims at issue in this case. Plaintiff's claims relate to the care provided to James Carter at the Dallas VA and CLC not the contractual relationship between the Dallas VA and the CLC.

Notwithstanding these objections, Defendant responds that the Dallas VA owns and operates the Community Living Center. The relationship between Dallas VA and the CLC is that the CLC is essentially the nursing home unit within the Dallas VA Hospital.

In addition, Defendant attaches a memorandum related to the Dallas Community Living Center, Dft Resp RFP 103-109:

- • VANTHCS Memorandum No. 18-02, Admission to the Dallas and Bonham Community Living Centers (CLC)

## REQUEST FOR PRODUCTION NO. 15

*Please produce true, correct, and legible copies of medical records related to James Carter's medical treatment and care at VA Medical Center from November 11, 2014 to present.*

### Response to RFP No. 15.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by specific communications between individuals. To the extent Plaintiff seeks documents related to a specific communication(s), the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

**REQUEST FOR PRODUCTION NO. 16**

*Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that evidence your claim that "The United states is not liable for Plaintiff's or Carter's alleged injuries to the extent that Plaintiff or Carter failed to mitigate same," as stated in Defendant United States of America's Original Answer.*

**Response to RFP No. 16.**

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Please see Defendant's response to Interrogatory 18.

**REQUEST FOR PRODUCTION NO. 17**

*Please produce true, correct, and legible copies of all records, documents, photographs and/or other items of tangible evidence that You contend substantiate and support the assertion that "The United States is not liable for Plaintiff's or Carter's alleged injuries to the extent that another actor's or actors' negligence was an intervening or superseding cause of the alleged injuries," as stated in Defendant United States of America's Original Answer.*

**Response to RFP No. 17.**

Defendant is not presently aware of any acts or negligence by any third party. Insofar as formal discovery by way of depositions has yet to be undertaken, any answer to this interrogatory must be conditioned on what subsequent discovery may reveal. Please see Defendant's response to Interrogatory 19.

**REQUEST FOR PRODUCTION NO. 18**

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 1.*

**Response to RFP No. 18.**

Defendant objects to Interrogatory No. 1 as not relevant or proportional to the needs of the case because it seeks information about the employment status of doctors, nurses, pathologists, x-ray techs, and/or any other medical personnel who provided care to Mr. Carter, but the care they provided is not at issue in this case.

Notwithstanding these objections, relevant documents have been produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery

requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order.  To the extent Plaintiff seeks specific documents, photographs and/or other tangible evidence, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 19

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 2.*

### Response to RFP No. 19.

Defendant contends that its employees provided health care to Mr. Carter that conformed to all aspects of the applicable standards of care, and that its employees properly supervised the care provided to Mr. Carter.

Relevant documents have been produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order.  To the extent Plaintiff seeks specific documents, photographs and/or other tangible evidence, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 20

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 6.*

### Response to RFP No. 20.

This request is duplicative of Request for Production No. 8.

## REQUEST FOR PRODUCTION NO. 21

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 7.*

### Response to RFP No. 21.

This request is duplicative of Request for Production No. 9.

## REQUEST FOR PRODUCTION NO. 22

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 8.*

### Response to RFP No. 22.

This request is duplicative of Request for Production No. 10.

## REQUEST FOR PRODUCTION NO. 23

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 9.*

### Response to RFP No. 23.

Defendant objects to and disputes Plaintiff's characterization of the evidence by stating that Defendant made a "finding of malnutrition as a contributing factor to James Carter's death" in Interrogatory No. 9.

Relevant documents have been produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order. To the extent Plaintiff seeks specific documents, photographs and/or other tangible evidence, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 24

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 10.*

### Response to RFP No. 24.

Defendant identified two dieticians in response to Interrogatory No. 10. Defendant produced documents relevant to this request pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

### REQUEST FOR PRODUCTION NO. 25

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports your answer to Plaintiff's Interrogatory No. 11.*

### Response to RFP No. 25.

None.  Defendant objects to and disputes Plaintiff's assertion in Interrogatory No. 11 that Defendant dropped Mr. Carter.  Defendant contends that its employees did not drop Mr. Carter while he was under Defendant's care, including on or about February 2, 2015.

### REQUEST FOR PRODUCTION NO. 26

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 12.*

### Response to RFP No. 26.

None.  Defendant objects to and disputes Plaintiff's assertions in Interrogatory No. 12 as vague, ambiguous, and a mischaracterization of the evidence to the extent that Plaintiff identifies words or phrases from multiple medical records to characterize Mr. Carter's injury.

## REQUEST FOR PRODUCTION NO. 27

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 13.*

### Response to RFP No. 27.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Defendant contends the United States provided health care to Mr. Carter which conformed to all aspects of the medical standards of care.

## REQUEST FOR PRODUCTION NO. 28

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 14.*

### Response to RFP No. 28.

None. Defendant does not assert that the Estate of James Carter failed to exhaust its administrative remedies in its Answer to Plaintiff's First Amended Original Complaint.

## REQUEST FOR PRODUCTION NO. 29

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 15.*

### Response to RFP No. 29.

None. Defendant objects to this request on grounds that Defendant did not identify any independent contractors in its affirmative defense. Instead, Defendant asserted that it has not waived sovereign immunity under the FTCA for any acts or omissions of its independent contractors.

## REQUEST FOR PRODUCTION NO. 30

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 16.*

### Response to RFP No. 30.

Defendant responded to Plaintiff's request regarding contributory negligence in its response to Plaintiff's Interrogatory No. 16.

Defendant produced documents relevant to this request pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not claims or defenses. To the extent Plaintiff seeks records, documents, photographs, and/or other tangible evidence regarding the facts Defendant identified in its Interrogatory responses, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 31

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 17.*

### Response to RFP No. 31.

Defendant responded to Plaintiff's request regarding proximate cause in its response to Plaintiff's Interrogatory No. 17.

Defendant produced documents relevant to this request pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not claims or defenses. To the extent Plaintiff seeks records, documents, photographs, and/or other tangible evidence regarding the facts Defendant identified in its Interrogatory responses, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 32

*Please produce true, correct and legible copies of all records documents, photographs and/or other items of tangible evidence that you contend substantiates or supports Your answer to Plaintiff's Interrogatory No. 20.*

### Response to RFP No. 32.

None.  Defendant is not presently aware of any acts or negligence by any third party.  Insofar as formal discovery by way of depositions has yet to be undertaken, any answer to this interrogatory must be conditioned on what subsequent discovery may reveal.

## REQUEST FOR PRODUCTION NO. 33

*Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(a) "Medical Records of James Carter."*

### Response to RFP No. 33.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Please see Mr. Carter's medical records previously produced, Dft ID 1-10,601.

## REQUEST FOR PRODUCTION NO. 34

*Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(b) "Administrative claim file."*

### Response to RFP No. 34.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Defendant objects to and is withholding documents responsive to this Request because it seeks materials subject to the attorney-client privilege, work product privilege, and/or 38 U.S.C. § 5705 and its implementing regulations.  Defendant provides the attached privilege log that identifies documents being withheld on the basis of privilege (Priv 001-133).

On February 29, 2016, VA Office of General Counsel received Plaintiff's SF-95, Claim for Damage, Injury, or Death, claiming $2 billion in damages for negligent medical care provided to Mr. Carter. VA Office of General Counsel is responsible for the administration of tort claims filed against the Agency under the Federal Tort Claims Act (FTCA) to determine if the claims have validity and if the claims should be paid or

denied.  In this case, VA Staff Attorney Jenny Mai was assigned to investigate the facts and circumstances surrounding Plaintiff's administrative tort claim and prepare an administrative claim file.  Thus, the administrative claim file was prepared by an Agency counsel in anticipation of litigation and contains Ms. Mai's research, conversations with witnesses, analysis of legal theories, litigation strategies, mental impressions, conclusions and opinions of the claim.  Therefore, these documents are privileged and exempt from disclosure by the attorney work-product doctrine codified in Federal Rules of Civil Procedure 26(b)(3).  Defendant provides the attached privilege log that identifies documents being withheld on the basis of privilege.

Notwithstanding and without waiving said objection, Defendant previously produced non-privileged documents contained in the administrative claim file, Dft ID 1-10,602-41 and in response to Plaintiff's discovery requests herein.

## REQUEST FOR PRODUCTION NO. 35

*Please produce true, correct and legible copies of all documents identified by Defendant in its Rule 26(a)(1) Initial Disclosures (ii)(c) "Policies and procedures applicable to the claims at issue."*

### Response to RFP No. 35.

Produced.  Defendant refers Plaintiff to the Veterans Health Administration-wide policies, procedures, requirements and other information of general applicability are available at http://www.va.gov/vhapublications/.

Defendant attaches policies applicable to the Dallas VA Medical Center, Dft Resp RFP 12-175.

## REQUEST FOR PRODUCTION NO. 36

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Mildred Padilla, PT.*

### Response to RFP No. 36.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 37

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Betsy Lucena, OTR.*

### Response to RFP No. 37.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 38

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ansey John, RN.*

### Response to RFP No. 38.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 39

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lee Ann Jones, RN [sic]*

### Response to RFP No. 39.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by

individual.  To the extent Plaintiff seeks documents related to a specific individual, the
.pdf documents provided are searchable, or easily converted to searchable format, so that
Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 40

*Please produce true, correct and legible copies of all medical records of James
Carter that refer to, were prepared by, or otherwise involved the care provided to James
Carter by Jaicus Solis, MD.*

### Response to RFP No. 40.

Produced pursuant to Defendant's Initial Disclosures and/or in response to
Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure
34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual
course of business.  The medical records provided are kept in chronological order, not by
individual.  To the extent Plaintiff seeks documents related to a specific individual, the
.pdf documents provided are searchable, or easily converted to searchable format, so that
Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 41

*Please produce true, correct and legible copies of all medical records of James
Carter that refer to, were prepared by, or otherwise involved the care provided to James
Carter by Candice Shewmake, RN.*

### Response to RFP No. 41.

Produced pursuant to Defendant's Initial Disclosures and/or in response to
Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure
34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual
course of business.  The medical records provided are kept in chronological order, not by
individual.  To the extent Plaintiff seeks documents related to a specific individual, the
.pdf documents provided are searchable, or easily converted to searchable format, so that
Plaintiff can readily identify the information requested.

**REQUEST FOR PRODUCTION NO. 42**

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Lakshmi Sakthivelnathan, MD.*

### Response to RFP No. 42.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

**REQUEST FOR PRODUCTION NO. 43**

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Josh Williams, RN.*

### Response to RFP No. 43.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

**REQUEST FOR PRODUCTION NO. 44**

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Melanie Rue, PA.*

### Response to RFP No. 44.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by

individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 45

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Anca Rohner, PA-C.*

### Response to RFP No. 45.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 46

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ali Pitafi, MD.*

### Response to RFP No. 46.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 47

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Batool Imtiaz, MD.*

### Response to RFP No. 47.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 48

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Shemsu Balker, MD.*

### Response to RFP No. 48.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 49

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Ishak A. Mansi, MD.*

### Response to RFP No. 49.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by

individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 50

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jennifer James, MD.*

### Response to RFP No. 50.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 51

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Zeeshan Ramzan, MD.*

### Response to RFP No. 51.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 52

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Henry Ntende, MD.*

### Response to RFP No. 52.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 53

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Susan Hedayati, MD.*

### Response to RFP No. 53.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by individual.  To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 54

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Jonathan Dowell, MD.*

### Response to RFP No. 54.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by

individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 55

*Please produce true, correct and legible copies of all medical records of James Carter that refer to, were prepared by, or otherwise involved the care provided to James Carter by Hkun Tun, MD.*

### Response to RFP No. 55.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. The medical records provided are kept in chronological order, not by individual. To the extent Plaintiff seeks documents related to a specific individual, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 56

*Please produce true, correct and legible copies of any reports, reviews, or evaluations of the care provided by Defendant to James Carter, where such record or document was prepared before this suit was filed.*

### Response to RFP No. 56.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Defendant objects to and is withholding documents responsive to this Request because it seeks materials subject to the attorney-client privilege, work product privilege, and/or 38 U.S.C. § 5705 and its implementing regulations. Defendant provides the attached privilege log that identifies documents being withheld on the basis of privilege (Priv 001-133).

Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. The medical records provided are kept in chronological order, not by specific communications between individuals. To the extent Plaintiff seeks documents related to reports, reviews, or evaluations of the care provided to Mr. Carter, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

All known, non-privileged information concerning Plaintiff and/or Mr. Carter are contained within the records provided or identified herein.

## REQUEST FOR PRODUCTION NO. 57

*Please produce true, correct and legible copies of any criticism, poor evaluation, disciplinary action, and/or other negative review of any of the medical providers involved in the care of James Carter, where such records of document were prepared before this suit was filed.*

### Response to RFP No. 57.

Defendant objects to this Request as being overly broad and not relevant or proportional to the needs of the case because Plaintiff seeks information regarding "any of the medical providers involved in the care of James Carter." Defendant objects on these grounds because Plaintiff seeks information related to all medical providers, including providers that Plaintiff does not allege provided negligent care to Mr. Carter. Plaintiff does not identify the specific medical providers who allegedly provided negligent care to Mr. Carter or explain what care he or she provided to Mr. Carter that was allegedly negligent to determine whether the criticisms, poor evaluations, disciplinary actions or negative reviews against that provider are relevant and proportional to the claims in this case.

Defendant also objects that the information requested is protected from disclosure under the Federal Privacy Act, 5 U.S.C. § 552a. If Plaintiff appropriately narrows the scope of this request and agrees to a Protective Order that protects documents from disclosure by both Plaintiff and Defendant, Defendant will produce relevant documents that are proportional to the needs of the case in response to such request.

Defendant also refers Plaintiff to the credentials of its physicians, which are listed on the Texas Medical Board's website.

## REQUEST FOR PRODUCTION NO. 58

*Please produce true, correct and legible copies of any records, documents and/or items of tangible evidence to show that James Carter received proper nutrition during the last thirty (30) days that he was under Defendant's medical care.*

### Response to RFP No. 58.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual

course of business.  The medical records provided are kept in chronological order, not by specific medical or health issues.  To the extent Plaintiff seeks documents related to a specific medical or health issue, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 59

*Please produce true, correct and legible copies of any records, documents, and/or items of tangible evidence to show that James Carter's nutritional needs during the last thirty (30) days of his life was being directed or supervised by a qualified dietician.*

### Response to RFP No. 59.

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests herein.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  The medical records provided are kept in chronological order, not by specific medical or health issues.  To the extent Plaintiff seeks documents related to a specific medical or health issue, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

Defendant also refers Plaintiff to the credentials of Dietitians in Texas, which are listed on the Texas Department of Licensing and Regulation's website.  For Plaintiff's convenience, Defendant attaches a copy of the Texas Department of Licensing and Regulation website showing that Julie Black and Sharon Langlais are licensed Dietitians, Dft Resp RFP 176-77.

Dated: April 12, 2017

Respectfully submitted,

JOHN PARKER
UNITED STATES ATTORNEY

_s/ Marti Cherry_
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, Texas  75242
Telephone:   214-659-8600
Facsimile:   214-659-8807
E-mail:  mary.cherry@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served this 12th day of April

2017, via certified mail, return receipt requested, (# 7016-2140-0000-5059-1573) to

Plaintiff or Plaintiff's attorney of record at the following address:

D Bradley Kizzia
1910 Pacific Avenue
Suite 13000
Dallas, Texas 75201

_s/ Marti Cherry_
Mary M. (Marti) Cherry
Assistant United States Attorney

# EXHIBIT M

-----Original Message-----
From: Brad Kizzia
Sent: Tuesday, August 08, 2017 3:18 PM
To: 'Cherry, Mary (USATXN)' <Mary.Cherry@usdoj.gov>
Subject: Dennis/Carter vs V.A.

Marti:

See attached for the Amended Second Deposition Notice of the corporate representative of the V.A.
Note that I changed the wording of the topics to incorporate my previous clarification that we seek to discover facts, not legal theories.
Note also that I changed the date to September 8, so that there will be no objection as to the document requests (although I'm not seeking production of that which has already been produced). I will work with you on a convenient date if September 8 is not good for you or your witness(es), so there is no need to file a motion to quash or for protection about the date.

I do not agree with your position on this deposition, but hope this amended notice provides clarity that can allow for compromise. I therefore urge you to reconsider.  If not, I guess you can file your motion so that the Court can resolve this issue. Again, although you acknowledge Plaintiff's right to depose a corporate representative of the V.A., to date you have not been willing or able to identify a single topic upon which you would agree to produce a representative for deposition. I think that is telling.

1

Respectfully,

D. Bradley Kizzia
Kizzia & Johnson PLLC
Please note our new address:
1910 Pacific Ave, Ste 13000
Dallas, Texas 75201
(o)   469.893.9940
(f)   214.451.0165

# EXHIBIT N

-----Original Message-----
From: Brad Kizzia
Sent: Friday, August 04, 2017 12:33 PM
To: Cherry, Mary (USATXN) <Mary.Cherry@usdoj.gov>
Cc: Parker, Tami (USATXN) <Tami.Parker@usdoj.gov>; Brad Kizzia <bkizzia@kjpllc.com>
Subject: Re: DENNIS / Carter v V.A. Defendant's Objection to Plaintiff's Second Notice of Deposition of a Corporate Representative

I disagree and wonder if you've actually re-read the deposition notice in light of my email yesterday (see below), which was intended to clarify our request to address your concerns. We want testimony about facts and not about 10,000 pages, but about the alleged defenses the V.A. Itself has raised and about the 3-4 specific instances of substandard care that we have cited.
You acknowledge that we have a right to depose a designated rep of the V.A. On what topics?

Sent from my BlackBerry 10 smartphone.
  Original Message
From: Cherry, Mary (USATXN)
Sent: Friday, August 4, 2017 12:17 PM
To: Brad Kizzia
Cc: Parker, Tami (USATXN)
Subject: RE: DENNIS / Carter v V.A. Defendant's Objection to Plaintiff's Second Notice of Deposition of a Corporate Representative

APP. 155

Brad,

Defendant recognizes a party's right to depose a corporate representative, and we're not trying to be difficult or impede your right to do so.  However, the concern we have with your notice is that, as written, it is truly overly broad and unduly burdensome.  I know those words get used in a cavalier manner in discovery these days, but as written, your notice requires that we obtain, and prepare, a witness or group of witnesses to discuss each and every aspect of medical care provided by the VA to a patient who entered the VA in a compromised situation, with significant morbidities, and who had a complicated medical course.

As you well know, there are more than 10,000 pages of records.  Mr. Carter's care was provided by a team of VA staff members, to include dozens of doctors, nurses, technicians, dieticians, etc.  Each of these professionals likely consulted with others, whether formally or informally, and likely considered a range of choices for their care of Mr. Carter, before selecting whatever course was selected to care for him.  Gathering and synthesizing all of that information to allow a single representative to testify under Rule 30(b)(6) is nearly impossible to do in a manner that would be complete.  Your response to this is that we can produce multiple corporate representatives, but we do not believe that Rule 30(b)(6) was intended to allow parties to substitute what should be regular depositions of fact witnesses into depositions of "corporate representatives."  Depositions of the medical staff you deem to have evidence necessary to your case is the most efficient, cost effective, way to obtain the information you seek.  That is what Fed.R.Civ.P. 1 requires. Rule 26 allows us to move for a protective order if we believe that the discovery you seek does not meet that standard.  Your request, as written, does not.

The request for our representative to discuss our affirmative defenses and interrogatory responses seems equally problematic.  As I've previously explained, the affirmative defenses and interrogatories answers were drafted by attorneys.  They were based on the medical records.  We just do not see how your request, as worded, is not unduly burdensome and doesn't seek information that would invade our work product privilege.  For example, one of our affirmative defenses involves contributory negligence.  You posed a contention interrogatory to us regarding the basis for this affirmative defense, and we answered that it was based on the medical records, and noted Mr. Carter's refusal to participate in physical therapy and occupational therapy sessions, that he refused to cooperate with the turn schedule, etc.  You did not object to our responses as incomplete, but you now ask for a corporate representative to address these issues.  Are you seeking to have a representative identify each and every instance in the 10,000+ pages where Mr. Carter was uncooperative?  That is unreasonable and unduly burdensome.  Are you seeking to have the representative tell you each record that the attorneys reviewed and considered when deciding to assert that defense? That would invade our work product and attorney/client privilege.

Again, we are open to working with you to narrow your request to something that is reasonable and addresses topics that are appropriate for a corporate representative to discuss.  And we are open to producing fact witnesses identified by you from the medical records as having information that you would like to further explore.  We can, and will as the rules require, supplement our discovery responses as more information becomes available through the discovery process.  But as it currently stands, we do not see how we can adequately meet the demands of your 30(b)(6) notice, and thus, without revisions and changes to that notice, we see no option but to petition the court for relief.


Marti Cherry
Assistant United States Attorney
1100 Commerce Street
Third Floor
Dallas, TX  75242
Direct: 214-659-8834
Email:  mary.cherry@usdoj.gov

2

-----Original Message-----
From: Brad Kizzia [mailto:bkizzia@kjpllc.com]
Sent: Thursday, August 03, 2017 2:58 PM
To: Cherry, Mary (USATXN) <MCherry@usa.doj.gov>
Cc: Amyett, Briana (USATXN) <BAmyett@usa.doj.gov>; Parker, Tami (USATXN) <TParker@usa.doj.gov>
Subject: RE: DENNIS / Carter v V.A. Defendant's Objection to Plaintiff's Second Notice of Deposition of a Corporate
Representative

Marti:

So I understand your position, are you saying you are unwilling to produce a representative to testify on ANY of the
listed topics? Please clarify.

We are not asking for someone to testify about your legal theories. We are asking for a knowledgeable representative
(or representatives) to testify as to the alleged facts (and other evidence, if any) to support the affirmative defenses that
have been asserted, the interrogatory answers that have been stated, and the documents that have been produced. If
you have no facts or evidence to support the alleged affirmative defenses, they should be withdrawn. If there are
purported facts or evidence that allegedly support such affirmative defenses, we are entitled to know them; but I
suspect such evidence is lacking and that's why you apparently don't have any witnesses to offer.

Also, we are not asking you to get a representative to learn the entire file if you prefer not to do that and assuming you
have not already done so. If you choose not to do that, you are entitled to produce different knowledgeable
representatives on different topics. In this regard, you mention that you could produce persons identified in the medical
records. Sure, you can do that. Just let me know what person will testify as to which topic.

Thanks.

D. Bradley Kizzia
Kizzia & Johnson PLLC
Please note our new address:
1910 Pacific Ave, Ste 13000
Dallas, Texas 75201
(o)   469.893.9940
(f)   214.451.0165

-----Original Message-----
From: Cherry, Mary (USATXN) [mailto:Mary.Cherry@usdoj.gov]
Sent: Thursday, August 03, 2017 2:45 PM
To: Brad Kizzia <bkizzia@kjpllc.com>
Cc: Amyett, Briana (USATXN) <Briana.Amyett@usdoj.gov>; Parker, Tami (USATXN) <Tami.Parker@usdoj.gov>
Subject: DENNIS / Defendant's Objection to Plaintiff's Second Notice of Deposition of a Corporate Representative

Brad,

Thank you sending me a copy of the Second Notice of Deposition of a Corporate Representative.  As we have previously
discussed, Defendant opposes your request to depose a representative regarding Defendant's legal theories.
Defendant's legal theories are derived from the medical records, which are equally available to both parties.  From the
Second Notice, it also appears that you are asking the corporate representative to learn the entire factual record in this
case and discuss the overall care provided to Mr. Carter by multiple care givers and medical providers.

Defendant believes that requiring a representative to review the entire medical file and to testify regarding what care Mr. Carter received as stated in the medical records is unduly burdensome and not proportional to the needs of the case.  And it is virtually impossible for a corporate representative to testify to the facts contained in the medical records without also explaining Defendant's legal theories and positions.  It would be far more efficient and less burdensome for individuals identified in the medical records, and who have actual knowledge of the care provided to Mr. Carter, to testify on their own behalf.

For all of these reasons, Defendant intends to file a motion to quash the Second Notice of Deposition of a Corporate Representative and will not be producing a corporate representative to testify on August 30, 2017.  If you change your mind and are willing to withdraw the notice, please let me know.  Otherwise, I will assume, and so advise the Court, that you are opposed to the motion to quash.

Defendant is not unwilling to produce a corporate representative to discuss any topics that are more appropriate for a corporate representative.  To the extent you identify such topic, Defendant is willing to consider producing a representative.

Best regards,

Marti Cherry
Assistant United States Attorney
1100 Commerce Street
Third Floor
Dallas, TX  75242
Direct:  214-659-8834
Email:  mary.cherry@usdoj.gov

-----Original Message-----
From: Brad Kizzia [mailto:bkizzia@kjpllc.com]
Sent: Wednesday, August 02, 2017 3:42 PM
To: Cherry, Mary (USATXN) <MCherry@usa.doj.gov>
Subject: Dennis/Carter v V.A.

Pursuant to your request, see attached for the Second Notice of Deposition of V.A.'s Representative.
As you can see, the notice schedules the deposition for August 30 at 1:30pm at your offices as you indicated.
Thanks.

D. Bradley Kizzia
Kizzia & Johnson PLLC
Please note our new address:
1910 Pacific Ave, Ste 13000
Dallas, Texas 75201
(o)  469.893.9940
(f)   214.451.0165

# EXHIBIT O

-----Original Message-----
From: Brad Kizzia
Sent: Wednesday, September 06, 2017 4:58 PM
To: 'Cherry, Mary (USATXN)' <Mary.Cherry@usdoj.gov>
Subject: RE: Dennis/Carter vs V.A.
Importance: High

Marti:

I received and reviewed today Defendant's Response and Objections to Plaintiff's Second Request for Production of Documents.  This response further illustrates the need for a deposition of a representative of Defendant to answer the questions that otherwise are going unanswered. Defendant asserts denials of specific acts or omissions that are the subject of this case, but then refuses to provide the bases for such denials other than to say, "see the records". I see the records and they don't support Defendant's denials, so Plaintiff is entitled to know what facts Defendant is relying upon, if any.

You have said before that you think your client acted within the standard of care as to the four specific injuries that are the subject of this case (and Plaintiff's Second Request for Production), yet you refuse to or are unable to point to the specific evidence in the records or otherwise to support that position. If you won't or can't do so, Plaintiff is entitled to have some representative of the V.A. do so. I suspect that no one can point to the evidence relied upon because there isn't any.

1

Do you plan to produce a representative for his/her deposition on Friday, 9/8, at 1pm as noticed?
Please advise.
Thanks.

D. Bradley Kizzia
Kizzia & Johnson PLLC
Please note our new address:
1910 Pacific Ave, Ste 13000
Dallas, Texas 75201
(o)   469.893.9940
(f)    214.451.0165

# EXHIBIT P

CARTER,JAMES EARNEST 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 [NTH] Wound Care Images CLIN 11/10/2015    --- page 1 of 1 ---



CARTER,JAMES EARNEST 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 [NTH] IMAGE CLIN 10/05/2015   --- page 1 of 1 ---



# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARBARA DENNIS, on behalf of the
ESTATE OF JAMES CARTER,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 3:16-CV-3148-G-BN

## DEFENDANT'S RESPONSE AND OBJECTIONS TO
## PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant United States of America (Defendant) serves its Response and

Objections to Plaintiff's Second Requests for Production.  The following responses are

based upon Defendant's interpretation of the requests propounded by Plaintiff and upon

information and documents presently available to Defendant after conducting a

reasonable investigation.

### REQUEST FOR PRODUCTION NO. 60

*Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show what caused Mr. Carter's leg wound while under the care of the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.*

**Response to RFP No. 60.**

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business.  To the extent Plaintiff seeks documents related to specific medical conditions or injuries, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

**Defendant's Response and Objections to Plaintiff's Second Requests for Production – Page 1 of 3**

## REQUEST FOR PRODUCTION NO. 61

*Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show why Mr. Carter's leg wound worsened while under the care of the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.*

**Response to RFP No. 61.**

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. To the extent Plaintiff seeks documents related to specific medical conditions or injuries, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 62

*Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show when and why the wound vac used on Mr. Carter stopped operating and who at the Dallas VA Medical Center was responsible for same.*

**Response to RFP No. 62.**

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. To the extent Plaintiff seeks documents related to specific medical conditions or injuries, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

## REQUEST FOR PRODUCTION NO. 63

*Please produce true, correct, and legible copies of any records, documents, and/or items of tangible evidence to show why Mr. Carter suffered from malnutrition last thirty (30) days of his life at the Dallas VA Medical Center and who at the Dallas VA Medical Center was responsible for same.*

**Response to RFP No. 63.**

Produced pursuant to Defendant's Initial Disclosures and/or in response to Plaintiff's discovery requests. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Defendant produced relevant documents as they are kept in the usual course of business. To the extent Plaintiff seeks documents related to specific medical

conditions or injuries, the .pdf documents provided are searchable, or easily converted to searchable format, so that Plaintiff can readily identify the information requested.

Dated: September 1, 2017

Respectfully submitted,

JOHN PARKER
UNITED STATES ATTORNEY

_s/ Marti Cherry_
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, Texas  75242
Telephone:   214-659-8600
Facsimile:   214-659-8807
E-mail:  mary.cherry@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September 2017, a true copy of the

foregoing was served, via certified mail, return receipt requested, (# 7017-1450-0000-

5563-1898) to Plaintiff or Plaintiff's attorney of record at the following address:

D Bradley Kizzia
1910 Pacific Avenue
Suite 13000
Dallas, Texas 75201

_s/ Marti Cherry_
Mary M. (Marti) Cherry
Assistant United States Attorney